UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW R. MAY, Individually and On Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>            v.<br><br>TELIK, INC., MICHAEL M. WICK, CYNTHIA M. BUTITTA, UBS SECURITIES, LLC, LEHMAN BROTHERS HOLDINGS, INC., BEAR STEARNS & CO., INC., NEEDHAM & COMPANY, INC., LAZARD FRERES & CO., LLC, FORTIS SECURITIES, INC., and J.P. MORGAN SECURITIES, INC.,<br><br>                Defendants. | Civil Action No. 1:07-cv-04819-CM |
| KEVIN HENNESSY, Individually and On Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>            v.<br><br>TELIK, INC., MICHAEL M. WICK, CYNTHIA M. BUTITTA, UBS SECURITIES, LLC, LEHMAN BROTHERS HOLDINGS, INC., and J.P. MORGAN SECURITIES, INC.,<br><br>                Defendants. | Civil Action No. 1:07-cv-05707-CM |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
POLICEMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO
FOR CONSOLIDATION OF THE RELATED ACTIONS, APPOINTMENT AS
<u>LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS .....................................................................................................2

ARGUMENT ..........................................................................................................................4

I.  THE RELATED ACTIONS SHOULD BE CONSOLIDATED............................................4

    A.    The Court Should Resolve The Consolidation Issue As A Prerequisite To The Determination Of Lead Plaintiff ..............................................................4

II. THE COURT SHOULD APPOINT PABF AS LEAD PLAINTIFF .....................................5

    A.    The Procedure Required By The PSLRA .........................................................5

        1.    PABF Is Willing To Serve As Class Representative ..................................6

        2.    PABF Is The Most Adequate Lead Plaintiff ..............................................7

            a.    PABF Is An Institutional Investor With The Largest Financial Interest In The Relief Sought By The Class ..........................................7

            b.    PABF Meets The Requirements Of Rule 23 ....................................10

III. THE COURT SHOULD APPROVE PABF'S CHOICE OF COUNSEL ...........................11

CONCLUSION ....................................................................................................................12

# TABLE OF AUTHORITIES

**CASES**

*Bowman v. Legato Sys.*,
　195 F.R.D. 655 (N.D. Cal. 2000) ............................................................................................8

*Gen. Tel. Co. v. Falcon*,
　457 U.S. 147 (1982), *aff'd*,
　815 F.2d 317 (5th Cir. 1987) ................................................................................................10

*Gluck v. CellStar Corp.*,
　976 F. Supp. 542 (N.D. Tex. 1997) ..................................................................................8, 10

*Greebel v. FTP Software, Inc.*,
　939 F. Supp. 57 (D. Mass. 1996) ............................................................................................8

*In re Baan Co. Sec. Litig.*,
　186 F.R.D. 214 (D.D.C. 1999) ...............................................................................................8

*In re Cendant Corp. Litig.*,
　264 F.3d 201 (3d Cir. 2001), *aff'd*,
　404 F.3d 173 (3d Cir. 2005) ...................................................................................................8

*In re Donnkenny Inc. Sec. Litig.*,
　171 F.R.D. 156 (S.D.N.Y. 1997) .........................................................................................11

*In re Drexel Burnham Lambert Group*,
　960 F.2d 285 (2d Cir. 1992) .................................................................................................11

*In re NASDAQ Market-Makers Antitrust Litig.*,
　172 F.R.D. 119 (S.D.N.Y. 1997) ....................................................................................10, 11

*In re Network Assocs. Inc., Sec. Litig.*,
　76 F. Supp. 2d 1017 (N.D. Cal. 1999) ...................................................................................8

*In re Oxford Health Plans, Inc., Sec. Litig.*,
　182 F.R.D. 42 (S.D.N.Y. 1998) ............................................................................................10

*In re Razorfish, Inc. Sec. Litig.*,
　143 F. Supp. 2d 304 (S.D.N.Y. 2001) ................................................................................2, 9

*Johnson v. Celotex Corp.*,
　899 F.2d 1281 (2d Cir. 1990) .................................................................................................5

*Mitchell v. Complete Mgmt., Inc., Sec. Litig.*,
No. 99-CV-1454 (DAB), 1999 WL 728678 (S.D.N.Y. Sept. 17, 1999) ...................4

*Primavera Familienstiftung v. Askin*,
173 F.R.D. 115 (S.D.N.Y. 1997) ...................4

*Ravens v. Iftikar*,
174 F.R.D. 651 (N.D. Cal. 1997) ...................8

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) ...................10

*Schulman v. Lumenis, Ltd.*,
No. 02 Civ. 1989 (DAB), 2003 WL 21415287 (S.D.N.Y. June 18, 2003) ...................8, 10

*Smith v. Suprema Specialties, Inc.*,
206 F. Supp. 2d 627 (D.N.J. 2002) ...................2

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
216 F.R.D. 248 (S.D.N.Y. 2003) ...................10

*Weltz v. Lee*,
199 F.R.D. 129 (S.D.N.Y. 2001) ...................10

**STATUTES**

15 U.S.C. § 78u-4(a)(1) ...................5

15 U.S.C. § 78u-4(a)(3)(A)(i)(II) ...................6, 7

15 U.S.C. § 78u-4(a)(3)(B)(i) ...................6, 7

15 U.S.C. § 78u-4(a)(3)(B)(ii) ...................4, 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ...................6, 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ...................6, 7, 11

Fed. R. Civ. P. 42 (a) ...................4

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in*,
1995 U.S.C.C.A.N. 730 ...................8

S. Rep. No. 104-98 (1995), *reprinted in*,

1995 U.S.C.C.A.N. 679 ..........................................................................................................9

**MISCELLANEOUS**

Elliot J. Weiss & John S. Beckerman,
*Let The Money Do The Monitoring: How Institutional Investors
Can Reduce Agency Costs In
Securities Class Actions,* 104 Yale L.J. 2053 (1995).............................................................9

## PRELIMINARY STATEMENT

Presently pending before the Court are two securities class action lawsuits (the "Actions") brought on behalf of all persons or entities (the "Class") who purchased or otherwise acquired the common stock of Telik, Inc. ("Telik" or the "Company") between March 27, 2003 and June 4, 2007, inclusive (the "Class Period"), including purchasers in the Company's November 5, 2003 stock offering and the Company's January 28, 2005 stock offering. Plaintiffs in the Actions allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated under Section 10(b), and Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"), against Defendants Telik, Michael M. Wick, Cynthia M. Butitta, UBS Securities LLC, Lehman Brothers Holdings Inc., J.P. Morgan Securities Inc., Bear, Stearns & Co., Inc., Needham & Company, Inc., Lazard Freres & Co., LLC, and Fortis Securities, Inc.

Policemen's Annuity and Benefit Fund of Chicago ("PABF") lost over $1.922 million as a result of Defendants' alleged fraud in connection with its purchases of Telik common stock during the Class Period. PABF respectfully submits this memorandum of law in support of its motion: (a) to consolidate the above-captioned actions; (b) for appointment as lead plaintiff, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B) and 15 U.S.C. § 77z-1(a)(3)(B); and (c) for approval of its selection of Bernstein Liebhard & Lifshitz, LLP ("Bernstein Liebhard") as lead counsel.

PABF believes that it has the largest financial interest in the outcome of the case.[1] As such, PABF meets the requirements of the PSLRA for appointment as lead plaintiff. Moreover,

---

[1] PABF's certification identifying its transactions in Telik common stock, as required by the PSLRA, is attached to the Seidman Decl. as Ex. 1. A chart detailing PABF's losses is attached to the Seidman Decl. as Ex. 2.

PABF satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that its claims are typical of the claims of the Class, and it will fairly and adequately represent the interests of the Class.

Further, PABF is precisely the type of institutional investor envisioned by Congress to serve as lead plaintiff when it enacted the PSLRA. The PSLRA provides for the Court to appoint as lead plaintiff the movant that has both the largest financial interest in the litigation and has made a *prima facie* showing that it is an adequate class representatives under Rule 23 of the Federal Rules of Civil Procedure. *See In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001); *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 632 (D.N.J. 2002). PABF is an institutional investor that satisfies both of these requirements.

## STATEMENT OF FACTS

The Actions allege that throughout the Class Period, Defendants misled financial analysts, the Food and Drug Administration ("FDA"), and investors into believing that TELCYTA[2] was safe and effective for public use, and that the Company had conducted sufficient clinical studies to prove it. The Company, however, did not disclose that its clinical studies showed that test subjects had died at an increased rate when compared to those participants that were not given the drug, and that physicians pulled other test subjects out of the study early, which compromised the data that was being gathered and analyzed. As a result of the false and misleading statements issued by Defendants, shares of the Company's common stock were artificially inflated during the Class Period.

---

[2] The Company's most advanced drug development candidate is TELCYTA (TLK286), a tumor-activated small molecule. TELCYTA is a small molecule cancer drug product candidate designed to be activated in cancer cells. Throughout the Class Period, the Company conducted multiple clinical trials to evaluate the effectiveness of TELCYTA, and reported positive results to investors.

11821v1                                              2

The Actions further allege that the Company's scheme was partially disclosed on December 26, 2006 when the Company reported preliminary data revealing that TELCYTA had failed all three of its clinical trials. In one trial, the Company stated that "TELCYTA did not achieve a statistically significant improvement in overall survival, the primary endpoint." In another trial, the Company stated that TELCYTA "did not achieve its primary endpoint of demonstrating a statistically significant improvement in overall survival for TELCYTA as compared to the active controls." Additionally, the Company disclosed that in the third clinical trial, approximately 25 % of the patients were prematurely discontinued from the assigned study treatment.

On this news, shares of the Company's stock declined $11.49 per share, or over 70.6 %, to close on December 26, 2006 at $4.77 per share, on unusually heavy trading volume.

Then, on June 3, 2007, the Company released the results of its Assist-1 trial at the annual meeting of the American Society of Clinical Oncology. In stark contrast to the Company's prior statements, the Company revealed for the first time that participants in the study groups actually died sooner when they used TELCYTA, an average of five months sooner than those who did not receive the drug. The following day, the FDA placed a clinical hold on the Company's Investigational New Drug Application for TELCYTA, which was initiated by FDA following the presentation of TELCYTA Phase 3 clinical trial results. The effect of this clinical hold stopped new patient enrollment in TELCYTA clinical trials, and the Company was prohibited from administering additional doses of the drug to those patients already enrolled in the trials.

Following the Company's news and the FDA announcement, shares of the Company's stock declined an additional 41%, to close on June 5, 2007 at $3.42 per share, on unusually heavy trading volume.

**ARGUMENT**

I.  **THE RELATED ACTIONS SHOULD BE CONSOLIDATED**

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [sub-]chapter has been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii) and 15 U.S.C. § 77z-1(a)(3)(B)(ii). Thereafter, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." *Id.*

> A.  **The Court Should Resolve The Consolidation Issue As A Prerequisite To The Determination Of Lead Plaintiff**

Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a). Consolidation is particularly appropriate in securities class action litigation. *See Mitchell v. Complete Mgmt., Inc., Sec. Litig.*, No. 99-CV-1454 (DAB), 1999 WL 728678, at *1 (S.D.N.Y. Sept. 17, 1999) ("In securities actions where the complaints are based on the same 'public statements and reports' consolidation is appropriate if there are common questions of law and fact . . .") (citation omitted); *see also Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997).

The complaints filed in the Actions are substantially similar and arise from the same set of facts and conduct. As a result, the Court should consolidate the aforementioned cases, and any others filed subsequent to this motion. *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990).

Once the Court decides the consolidation motion, the PSLRA mandates that the Court decide the lead plaintiff issue "[a]s soon as practicable." Section 21D(a)(3)(B)(ii), 15 U.S.C. §

78u-4(a)(3)(B)(ii) and Section 27(a)(3)(B)(ii), 15 U.S.C. § 77z-1(a)(3)(B)(ii). As PABF has an interest in moving the Actions forward, it respectfully urges the Court to resolve the consolidation motion as soon as practicable. A prompt determination is reasonable and warranted under Rule 42(a), especially given the common questions of law and fact presented by the related actions now pending in this District.

## II. THE COURT SHOULD APPOINT PABF AS LEAD PLAINTIFF

### A. The Procedure Required By The PSLRA

The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act and Securities Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." Sections 21D(a)(1) and (a)(3)(B), 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B) and Section 27(a)(3)(B)(ii), 15 U.S.C. §§ 77z-1(a)(1) and (a)(3)(B).

First, the plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff. Section 21D(a)(3)(B)(ii), 15 U.S.C. § 78u-4(a)(3)(B)(ii) and Section 27(a)(3)(B)(ii), 15 U.S.C. § 77z-1(a)(3)(B)(ii). The PSLRA requires the court to consider within 90 days all motions that were filed within 60 days after publication of that notice made by any person or group of persons who are members of the proposed class to be appointed lead plaintiff. Sections 21D(a)(3)(A)(i)(II) and (a)(3)(B)(i), 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (a)(3)(B)(i) and Sections 27(a)(3)(A)(i)(II) and (a)(3)(B)(i), 15 U.S.C. §§ 77z-1(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

  (i) has either filed the complaint or made a motion in response to a

78u-4(a)(3)(B)(ii) and Section 27(a)(3)(B)(ii), 15 U.S.C. § 77z-1(a)(3)(B)(ii). As PABF has an interest in moving the Actions forward, it respectfully urges the Court to resolve the consolidation motion as soon as practicable. A prompt determination is reasonable and warranted under Rule 42(a), especially given the common questions of law and fact presented by the related actions now pending in this District.

## II. THE COURT SHOULD APPOINT PABF AS LEAD PLAINTIFF

### A. The Procedure Required By The PSLRA

The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act and Securities Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." Sections 21D(a)(1) and (a)(3)(B), 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B) and Section 27(a)(3)(B)(ii), 15 U.S.C. §§ 77z-1(a)(1) and (a)(3)(B).

First, the plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff. Section 21D(a)(3)(B)(ii), 15 U.S.C. § 78u-4(a)(3)(B)(ii) and Section 27(a)(3)(B)(ii), 15 U.S.C. § 77z-1(a)(3)(B)(ii). The PSLRA requires the court to consider within 90 days all motions that were filed within 60 days after publication of that notice made by any person or group of persons who are members of the proposed class to be appointed lead plaintiff. Sections 21D(a)(3)(A)(i)(II) and (a)(3)(B)(i), 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (a)(3)(B)(i) and Sections 27(a)(3)(A)(i)(II) and (a)(3)(B)(i), 15 U.S.C. §§ 77z-1(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

  (i) has either filed the complaint or made a motion in response to a

                notice;

(ii)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

(iii)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

Section 21D(a)(3)(B)(iii)(I), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) and Section 27(a)(3)(B)(iii)(I), 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Section 21D(a)(3)(B)(iii)(II), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) and Section 27(a)(3)(B)(iii)(II), 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

As set forth below, PABF satisfies the foregoing criteria and is not aware of any unique defenses that Defendants could raise against it. Therefore, PABF is entitled to the presumption that it is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in the Actions.

        **1.**    **PABF Is Willing To Serve As Class Representative**

On June 6, 2007, counsel caused a notice (the "Notice") to be published pursuant to Section 21D(a)(3)(A)(i) and Section 27(a)(3)(A)(i), which announced that a securities class action had been filed against, among others, Telik, and which advised putative class members that they had until August 6, 2007 to file a motion to seek appointment as a lead plaintiff in the action.[3] PABF has reviewed one of the complaints filed in the Actions and has timely filed its motion pursuant to the Notice. In doing so, PABF has attached its certification attesting to its willingness to serve as representative of the Class and provide testimony at deposition and trial,

---

[3] The first action against Telik, denominated *Andrew R. May v. Telik, Inc., et al.*, Civil Action No.: 07-cv-04819-CM, was filed on June 6, 2007. On June 6, 2007, the Notice was published over *Business Wire. See* Seidman Decl. at Ex. 3.

11821v1                                          6

if necessary. *See* Seidman Decl. at Ex. 1. Accordingly, PABF satisfies the first requirement to serve as lead plaintiff for the Class. Section 21D(a)(3)(B)(iii)(I)(aa), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) and Section 27(a)(3)(B)(iii)(I)(aa), 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa).

  **2.** **PABF Is The Most Adequate Lead Plaintiff**

    **a.** **PABF Is An Institutional Investor With The Largest Financial Interest In The Relief Sought By The Class**

Under the PSLRA, any member of the purported class may move for appointment as lead plaintiff within 60 days of the publication of notice that the action has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) and 15 U.S.C. § 77z-1(a)(3)(A)(i)(II). Subsequently, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i) and 15 U.S.C. § 77z-1(a)(3)(B)(i).

The legislative history of the PSLRA demonstrates that it was intended to encourage institutional investors, such as PABF, to serve as lead plaintiff. The explanatory report accompanying the PSLRA's enactment specifically states that:

> The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the "most adequate plaintiff."
>
>      \* \* \*
>
> The Conference Committee believes [that] . . . in many cases the beneficiaries of pension funds -- small investors -- ultimately have the greatest stake in the outcome of the lawsuit. Cumulatively, these small investors represent a single large investor interest. Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.

H.R. CONF. REP. NO. 104-369, at 34 (1995), *reprinted in*, 1995 U.S.C.C.A.N. 730, 733.

This Court has noted a Congressional preference to appoint institutional investors. *See Schulman v. Lumenis, Ltd.*, No. 02 Civ. 1989 (DAB), 2003 WL 21415287, at *2 (S.D.N.Y. June 18, 2003) (one purpose behind the PSLRA is "to ensure that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel") (internal quotations and citations omitted). "Congress believed that this could best be achieved by encouraging institutional investors to serve as lead plaintiffs." *Id. See also In re Cendant Corp. Litig.*, 264 F.3d 201, 244 (3d Cir. 2001), *aff'd*, 404 F.3d 173 (3d Cir. 2005) (Congress "anticipated and intended that [institutional investors] would serve as lead plaintiffs").[4]

Indeed, Congress deemed institutional investors "presumptively most adequate to serve as lead plaintiffs in securities class actions." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 63 (D. Mass. 1996). Furthermore, Congress believed that "increasing the role of institutional investors in class actions [would] ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions." *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 221 (D.D.C. 1999) (citations omitted); *Ravens v. Iftikar*, 174 F.R.D. 651, 661 (N.D. Cal. 1997) (stating that Congress wanted to encourage large, sophisticated institutional investors to direct securities class actions, thereby supplanting the prior regime of "figurehead plaintiffs who exercise no meaningful supervision of litigation"). Congress reasoned that the empowerment of institutional investors would result in the appointment of lead plaintiffs that can best prosecute

---

[4] *See also Bowman v. Legato Sys.*, 195 F.R.D. 655, 657 (N.D. Cal. 2000) (institutional investors are "exactly the type of lead plaintiff envisioned by Congress when it instituted the [PSLRA] lead plaintiff requirements . . ."); *In re Network Assocs. Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999) ("Congress expected that the lead plaintiff would normally be an institutional investor"); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997) ("through the PSLRA, Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors").

11821v1                                  8

the claims and are best able to negotiate with and oversee counsel. *See Razorfish*, 143 F. Supp. 2d at 309 (stating that Congress intended that "institutional plaintiffs with expertise in the securities market and real financial interest in the integrity of the market would control the litigation . . ."); *Gluck*, 976 F. Supp. at 548 ("The legislative history of the Reform Act is replete with statements of Congress' desire to put control of such litigation in the hands of large, institutional investors").

This presumption is rooted in Congress' belief that "increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts." S. REP. NO. 104-98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690. In reaching this conclusion, Congress reasoned that:

> Institutions' large stakes give them an incentive to monitor, and institutions have or readily could develop the expertise necessary to assess whether plaintiffs' attorneys are acting as faithful champions for the plaintiff class.

Elliot J. Weiss & John S. Beckerman, *Let The Money Do The Monitoring: How Institutional Investors Can Reduce Agency Costs In Securities Class Actions*, 104 Yale L.J. 2053, 2095 (1995) ("Weiss & Beckerman"). *See also* S. REP. NO. 104-98, at 11 n.32 (noting that Weiss & Beckerman provided "the basis for the most adequate plaintiff provision").

PABF is ideally suited for the role as lead plaintiff. PABF lost over $1.922 million during the Class Period. *See* Seidman Decl. Ex. 2. As a large institutional investor with significant resources dedicated to overseeing and supervising the prosecution of the litigation, PABF will be able to actively represent the class and "drive the litigation" to ensure that the Class obtains the best recovery possible and implement corporate governance changes to correct the environment which allowed this fraud to take place and to prevent a recurrence ever again. *See Gluck*, 976 F. Supp. at 549.

### b.  PABF Meets The Requirements Of Rule 23

Equally important, PABF satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure, which are the provisions of Rule 23 relevant to the appointment of lead plaintiff under the PSLRA. *See Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003); *Schulman*, 2003 WL 21415287, at **5-6. *See also Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) (considering only typicality and adequacy on a motion for consolidation and for designation of lead plaintiff and lead counsel).

PABF's certification establishes that it meets the typicality requirement of Rule 23 because it: (i) suffered the same injuries as the absent class members; (ii) suffered as a result of the same course of conduct by Defendants; and (iii) its claims are based on the same legal issues. *See Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *see also In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (typicality inquiry analyzes whether plaintiffs' claims "arise from the same conduct from which other class members' claims and injuries arise"). Rule 23 does not require that the named plaintiff be identically situated with all class members. It is enough if its situations share a common issue of law or fact. *See In re NASDAQ Market-Makers Antitrust Litig.*, 172 F.R.D. 119, 127 (S.D.N.Y. 1997). A finding of commonality frequently supports a finding of typicality. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 158 n.13 (1982), *aff'd*, 815 F.2d 317 (5th Cir. 1987) (noting how the commonality and typicality requirements "merge"). Here, the questions of law and fact common to the members of the Class and which may affect individual Class members include the following:

- whether the federal securities laws were violated by Defendants' acts;
- whether statements made by Defendants to the investing public during the Class Period contained material misrepresentations concerning the facts about the efficacy and safety of the Company's drug TELCYTA;
- whether Defendants acted knowingly or recklessly in issuing false and misleading statements; and

- whether the members of the Class sustained damages and, if so, what is the proper measure of damages.

These questions apply equally to PABF as to all members of the purported Class. Similar to all of the other members of the Class, PABF purchased shares of Telik common stock at prices materially distorted as a result of Defendants' misrepresentations. Because PABF's claims are based on the same legal theories and "arise from the same course of conduct that gives rise to the claims of other Class members," the typicality requirement is satisfied. *See NASDAQ Market-Makers*, 172 F.R.D. at 126; *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992).

Further, PABF is uniquely able to fulfill the duties and responsibilities required to serve as lead plaintiff. Specifically, PABF will be diligent in leading the litigation, including supervising lead counsel and directing litigation strategy and any settlement discussions to obtain the largest recovery for the Class.

## III.   THE COURT SHOULD APPROVE PABF'S CHOICE OF COUNSEL

Pursuant to the PSLRA, the proposed lead plaintiff shall, subject to court approval, select and retain counsel to represent the Class. *See In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997). The Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa). In that regard, PABF requests the appointment of the law firm of Bernstein Liebhard to serve as lead counsel in this case. Bernstein Liebhard has extensive experience in successfully prosecuting securities fraud actions, has frequently been appointed as lead counsel since the passage of the PSLRA, and has frequently appeared in major actions before this and other courts throughout the country. *See* Bernstein Liebhard's firm résumé, attached as Ex. 4 to the Seidman Decl.

## **CONCLUSION**

For the foregoing reasons, PABF respectfully requests that this Court: (1) consolidate the captioned, and all subsequently-filed, related actions; (2) appoint PABF as lead plaintiff in the captioned, and all subsequently-filed, related actions; and (3) approve PABF's selection of Bernstein Liebhard as lead counsel.

Dated: August 6, 2007

Respectfully submitted,

**BERNSTEIN LIEBHARD & LIFSHITZ, LLP**

/s/
_____
Sandy A. Liebhard (SL-0835)
Joseph R. Seidman, Jr. (JS-9260)
10 East 40th Street, 22nd Floor
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218

*Lead Counsel for PABF and Proposed Lead Counsel for the Class*

# CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the attached was served upon the following counsel of record in the actions filed this Court, First Class Mail prepaid, this 6th day of August 2007:

*Attorneys for Plaintiffs:*

Evan J. Smith
**Brodsky & Smith, L.L.C.**
240 Mineola Blvd.
Mineola, NY 11501

Darren J. Robbins
Mary K. Blasy
**Lerach Coughlin Stoia Geller Rudman & Robbins, LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101

Marc S. Henzel
**Law Offices of Marc S. Henzel**
273 Montgomery Avenue, Suite 202
Balsa Cynwyd, PA 19004

Laurence M. Rosen
**The Rosen Law Firm, P.A.**
350 5th Avenue, Suite 5508
New York, NY 10118

Michael M. Goldberg
**Glancy Binkow & Goldberg LLP**
1801 Avenue of The Stars, Suite 311
Los Angeles, CA 90067

Richard A. Maniskas
**Schiffrin & Barroway L.L.P.**
280 King of Prussia Road
Radnor, PA 19087

Samuel Howard Rudman
David Avi Rosenfeld
**Lerach Coughlin Stoia Geller Rudman & Robbins, LLP**
58 South Service Road, Suite 200
Melville, NY 11747

Christine Pedigo Bartholomew
**Finkelstein Thompson & Loughran**
601 Montgomery Street, Suite 665
San Francisco, CA 94111

Elizabeth K. Tripodi
**Finkelstein Thompson & Loughran**
1050 30th Street NW
Washington, DC 20007

*Attorneys for Defendants:*

David W. Haller
Linda C. Goldstein
**Covington & Burling LLP**
620 Eighth Avenue
New York, NY 10018

Erik J. Olson
**Morrison & Foerster LLP**
755 Page Mill Road
Palo Alto, CA 94304

/s/
_____
JOSEPH R. SEIDMAN, JR.

11865v1