**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

| | |
|---|---|
| ANDREW R. MAY, Individually and on Behalf of All Others Similarly Situated, : | 07-Civ-4819-CM |
| : | |
| Plaintiff, : | |
| : | |
| vs. : | |
| : | |
| TELIK CORPORATION, MICHAEL M. WICK : CYNTHIA M. BUTITTA, UBS SECURITIES : LLC, LEHMAN BROTHERS, HOLDINGS INC. : BEAR STEARNS & CO., INC., NEEDHAM & : COMPANY, INC., LAZARD FRERES & CO., : LLC., FORTIS SECURITIES INC. AND J.P. : MORGAN SECURITIES INC., : | |
| Defendants. : | |

-----------------------------------------------------------------X

| | |
|---|---|
| KEVIN HENNESSY, Individually and on Behalf of All Others Similarly Situated, : | 07-Civ-5707-CM |
| : | |
| Plaintiff, : | |
| : | |
| vs. : | |
| : | |
| TELIK CORPORATION, MICHAEL M. WICK : CYNTHIA M. BUTITTA, UBS SECURITIES : LLC, LEHMAN BROTHERS, HOLDINGS INC. : AND J.P. MORGAN SECURITIES INC., : | |
| : | |
| Defendants. : | |

-----------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND IN FURTHER SUPPORT OF THE MOTION OF THE MEHAN GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL**

## TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................1

II.   FACTUAL AND PROCEDURAL HISTORY.......................................5

III.  THE MEHAN GROUP SHOULD BE APPOINTED LEAD PLAINTIFF.........5

      A.    Chicago Fund and Mr. Poole Are Not Typical To Represent The
            Interests of Post-12/26/2006 Telik Purchasers...............................5

      B.    Chicago and Mr. Poole Are Not Adequate To Represent The
            Interests of Post-12/26/06 Telik Purchasers.................................11

      C.    The Mehan Group Is The Most Adequate Plaintiff.........................14

IV.   CONCLUSION...............................................................................16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Amchem, Products, Inc. v. Windsor*, 521 U.S. 591 (1997) .........................9, 10, 11, 12, 14

*Basic, Inc. v. Levinson*, 485 U.S. 224 (1988).................................................................5, 6

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975)................................................................8

*Blue Chip Stamp v. Manor Drugs*, 421 U.S. 723 (1975) ......................................................6

*Brooks v. Interlink Elec., Inc.*, CV 05-8133 PA (SHx), slip op,
(C.D. Cal. July 17, 2006)…………………………………………………………...……...7

*In re CIGNA Corporation Securities Litigation*, No. 02-8088, 2005 U.S. Dist.
LEXIS  41293 (E.D. Pa. Mar. 23, 2005).........................................................................7

*In re Consumers Power Co. Securities Litigation*, 105 F.R.D. 583 (E.D. Mich.
1985) .................................................................................................................................8

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*, No. C 03-2522 MHP, 2006 WL
1180267…………………………………………………………………………………7

*Dura Pharmaceuticals., Inc v. Broudo*, 544 U.S. 336 (2005) ......................................5, 6, 9

*East Texas Motor Freight Sys., Inc. v. Rodriguez*,
431 U.S. 395, 403 (1977))……………………………………………………………...…9

*General Telegraph of the Southwest v. Falcon*, 457 U.S. 147 (1982) ...............................11

*Green v. Occidental Petroleum Corp.*, 541 F.2d 1335 (9th Cir. 1976) .............................10

*Hoban v. U.S. Life Credit Life Insurance Co.*, 163 F.R.D. 509 (N.D. Ill 1995)................11

*In re Joint Eastern & Southern District Asbestos Litigation*,
982 F.2d 721 (2d Cir. 1992), *modified on rehearing*,
993 F.2d 7 (2d Cir. 1993)......................................................................................11, 12

*In re Lucent Technologies, Inc. Sec. Litigation*, 221 F. Supp. 2d 472
(D.N.J. 2001)..................................................................................................................12, 13

ii

*Miller v. Ventro Corp.*, No. 01 Civ. 1287, 2001 U.S. Dist. LEXIS 26027
(N.D. Cal. Nov. 28, 2001)......................................................................................13

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ...............................................12

*In re Oxford Health Plans, Inc. Sec. Litigation,*
182 F.R.D. 42 (S.D.N.Y. 1998) .............................................................................14

*In re PHLCORP Sec. Litig.*, 1989 U.S. Dist. LEXUS 13681
(S.D.N.Y. Nov. 16, 1989)).....................................................................................12

*Robbins v. Moore Medical Corp.*, 788 F. Supp. 179 (S.D.N.Y. 1992)...............8

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993)................................................7

*In re Seagate Technology II Securities Litigation*, 843 F. Supp. 1341
(N.D. Cal. 1994).......................................................................................................9

*In re Seagate Technology II Securities Litigation,*
156 F.R.D. 229 (N.D. Cal.1994).............................................................................9

*In re Simon II Litigation*, No. 98-cv-0675, 2002 U.S. Dist. LEXIS 25632
(E.D.N.Y. October 22, 2002)..................................................................................12

*In re TDH Partners LLP v. Ryland Group, Inc.*, No. 04-cv-0073,
2006 U.S. Dist. LEXIS 36084 (N.D. Tex. June 2, 2006) ........................................7

*Ziemack v. Centel Corp.*, 163 F.R.D. 530 (N.D. Ill. 1995) .................................9

## STATE CASES

*In re Cornerstone Propane Partners, L.P. Sec. Litigation, Number* C 03-2522
MHP, 2006 WL 1180267 (C.D. Cal. May 3, 2006).................................................7

## DOCKETED CASES

*Andrew R. May v. Telik Corp., et al.*, Docket No. 07-Civ. 4819
(S.D.N.Y. June 6, 2007)...........................................................................................4

*Hennessy v. Telik Inc.*, No. 1:07-cv-05707 ......................................................5, 6

iii

*Stephen O'Grady v. Telik, Inc.*, 1:07-cv-07040-UA (S.D.N.Y. August 6, 2007)............4

## FEDERAL STATUTES

15 U.S.C. § 78u-4(a)(3) ...............................................................................11, 15

15 U.S.C. § 78u-4(b)...................................................................................6

Fed. R. Civ. P. 23........................................................................................11

Fed. R. Civ. P. 42........................................................................................1, 13

## I.    INTRODUCTION

Ramesh K. Mehan, RML Limited, Ramesh K. Mehan Irrevocable Children's Trust, Joel  K. Mehan Irrevocable Trust, Sheila G. Mehan Irrevocable Trust, Renee Mehan Family Trust, Neal D. Mehan Irrevocable Trust, Rahul D. Mehan and Ramesh K. Mehan Family Trust, (the "Mehan Group") respectfully submit this memorandum in opposition to the motions of the (1) the Policeman's Annuity and Benefit Fund of Chicago (the "Chicago"); (2) the Richard Scott Poole ("Mr. Poole"); (3) Erste-Sparinvest Kapitalanlagegesellschaft, m.b.H ("Erste-Sparinvest"); (4) Telik Investor Group (5) Electrical Workers Pension Fund, Local 103m I.B.E.W. (the "Electrical Fund"); 6) Stephen O'Grady ("Mr. O'Grady"); and, (7) ZVI Trading Corporation Employees' Money Purchase Plan & Trust ("ZVI Trust") for appointment, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995 ("PLSRA"), as lead plaintiff, and for approval of its selection of lead counsel and liaison counsel, and in further support of the motion of the Mehan Group for appointment as lead plaintiff, and for approval of its selection of Brower Piven, A Professional Corporation ("Brower Piven") as lead counsel for the Class.[1]

The Mehan Group opposes the motions of the other seven competing movants for appointment as lead plaintiff for those class members who purchased after December 26, 2006 (the "Post-12/26 Class"), because the Mehan Group is the most adequate plaintiff for those Telik investors, and because the Mehan Group otherwise satisfies the

---

[1]  All eight movants support consolidation, and, therefore, all of the related federal securities law actions against Telik Corporation ("Telik") should be consolidated pursuant to Fed. R. Civ. P. 42(a).

requirements of Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), and Section 27(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. 77z-l(a), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995 ("PSLRA")). Indeed, the Mehan Group is the movant with the largest financial interest in the relief sought by purchasers after December 26, 2006 with standing to assert the claims of all Class members.

Five of the seven competing movants, Erste-Sparinvest, Telik Investor Group, Electrical Fund, Mr. O'Grady, and ZVI Trust, have losses that are far smaller than the $816,530.66 loss suffered by the Mehan Group. Only Chicago and Mr. Poole have claimed losses greater. That, however, does not end the inquiry.

Here, the operative complaint, which was not filed by Chicago, Mr. Poole or the Mehan Group, alleges a single class period stretching from March 27, 2003 to June 4, 2007 (the "Class Period"). That Class Period also implicates several alleged partial disclosures, the first of which is alleged to have occurred on December 26, 2006. This would not usually create a problem for a putative lead plaintiff who otherwise had the largest financial interest in the relief sought. That is not the case here because both Chicago and Mr. Poole sold *all* of their respective Telik shares immediately after the December 26, 2006 disclosure. The Class Period, however, continues for an additional six months during which time additional allegedly false and misleading statements, as well as additional partial disclosures, were made. Accordingly, as Teliik "outs" as of December 2006, neither Chicago nor Mr. Poole has a cognizable claim for the alleged misrepresentations and/omissions made after December 2006 when they ceased to be Telik investors. Since neither Chicago nor Mr. Poole can have *any claim* –typical or not

2

-- for any alleged misconduct in connection with the purchase and sale of Telik securities occurring after they completely sold out of their Telik stock in December 2006, and they cannot, as a matter of law, have *any interest* in common or co-extensive with Post-12/26 Class member that they can adequately represent.

By contrast, the Mehan Group, which purchased Telik shares throughout the alleged Class Period, and held Telik shares past the June 5, 2007 Class Period closing date, has standing to pursue the claims of all purchasers throughout the alleged Class Period. Thus, while obvious and palpable potential conflicts between Chicago and Mr. Poole exist representing anyone who purchased after December 26, 2006, no such conflicts exist with respect to the Mehan Group's representation of the entire Class. Appointment of a single movant with standing for all claims (*i.e.*, the Mehan Group) would provide the Court with a lead plaintiff that does not suffer from disabling antagonisms towards a large segment of the Class alleged. In any event, even if the Court finds Chicago or Mr. Poole appropriate representatives of those who purchased before December 26, 2006, but sold before June 3, 2007, the Mehan Group respectfully submits that the Court should, at the very least, appoint the Mehan Group to represent the Post-12/26 Class and approve its selection of lead counsel to represent that class.

## II.    FACTUAL AND PROCEDURAL HISTORY

This action was initiated on June 6, 2007 by plaintiff Andrew R. May in the United States District Court for the Southern District of New York on behalf of a class consisting of all persons and entities who purchased Telik common stock during the Class Period at artificially inflated prices against Telik and certain individual defendants asserting claims under Section 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5

and Sections 11, 12, and 15 of the Securities Act. *See Andrew R. May v. Telik Corp., et al.*, Docket No. 07-Civ. 4819 (S.D.N.Y. June 6, 2007). Also, on June 6, 2007, a notice was published over *Business Wire* advising members of the asserted Class of their right to move the Court to serve as lead plaintiff within the requisite period from the date of publication of the notice. Thereafter, two additional cases were filed in the Southern District of New York: (1) *Hennessy v. Telik Inc.*, 07-cv-5707-CM (S.D.N.Y. June 14, 2007); and (2) *Stephen O'Grady v. Telik, Inc.*, 1:07-cv-07040-UA (S.D.N.Y. August 6, 2007).

On August 6, 2007, eight individuals and groups timely moved for appointment as lead plaintiff. The losses reported in those motions, based on the attached certifications, are as follows:

- Chicago                    $1,922,000.00
- Mr. Poole                  $876,327.00
- Mehan Group                $816,530.66

  _____

- Erste-Sparinvest           $581,141.07
- Telik Investor Group       $327,961.55
- Electrical Fund            $227,874.86
- Mr. O'Grady                $ 45,514.00
- ZVI Trust                  $ 9,210.00.

It is evident from the foregoing that Chicago, Mr. Poole and the Mehan Group have by far the largest losses from among those who have moved to be appointed lead plaintiff in this case.

Moreover, based on the certifications of Chicago and Mr. Poole, Chicago sold all of its Telik shares by December 29, 2006, and Mr. Poole sold all of his Telik shares by December 27, 2006. Therefore, among those movants with the largest losses, the Mehan Group, which purchased Telik shares both before and after December 26, 2006, and held 160,601 Telik shares to the end of the Class period on June 4, 2007, is the movant with the largest financial interest with standing to assert the claims of all Class members, including those who purchased after December 26, 2006.

## III.     THE MEHAN GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

### A.          Chicago and Mr. Poole Are Not Typical To Represent The Interests of Post-12/26/06 Telik Purchasers

The Court is faced with unique situation, created in part, by the Supreme Court's landmark loss causation decision in *Dura Pharm., Inc v. Broudo*, 544 U.S. 336 (2005), and fraud-on-the-market decision in *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988). Two movants, Chicago and Mr. Poole solely for misrepresentations and omissions made between March 27, 2003 and December 26, 2006. Both suffered substantial losses (as did the Mehan Group) on December 26, 2006, when Telik revealed preliminary results of three Phase 3 trials and its stock reacted by dropping approximately 70%. *See Hennessy v. Telik Inc.*, No. 1:07-cv-05707, dated June 14, 2007, Compl. at ¶¶ 4, 5. This, however, is where the interests of Chicago and Mr. Poole diverge from the Class they seek to represent. According to the sworn certifications of Chicago, it had sold all of its Telik shares by September 29, 2007, and Mr. Poole sold all of his Telik shares by December 27, 2006. The Class Period, however, continues for another six months during which additional alleged misrepresentations and omissions were made. Complaint ¶¶ 1, 7. Thereafter, on June 3, 2007, Telik, for the first time, released the data underlying the

results of the three failed Phase 3 studies, which resulted in its stock declining another 21%. *See id.* ¶ 6. Finally, on June 5, 2007, it was announced that the FDA put a clinical hold on Telik's investigational new drug, thus causing shares of Telik's stock to decline an additional 25.5% percent, *see id.* ¶ 7, and the Class Period comes to a close.

Based on these undisputed facts, neither Chicago nor Mr. Poole have a cognizable claim for any statements or omissions made by defendants between December 26, 2006 and June 5, 2007, *see* 15 U.S.C. § 78u-4(b)(1) (requiring each alleged misrepresentation and/or omission be specified to state a claim); they cannot show they made a purchase in connection with any such alleged misstatements or omissions because they made no purchases during that latter period, *see Blue Chip Stamp v. Manor Drugs,* 421 U.S. 723 744-47 (1975); they cannot claim they detrimentally relied on any misrepresentation or omission during that later period because they did not acquire any additional Telik shares during that later period, *see Basic,* 485 U.S. at 248 ("Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance."); and they cannot show they suffered a loss as a result of the revelations that occurred on June 3, 2007, or June 5, 2007, as they owned no Telik stock to suffer a loss on when those revelations occurred. *See Dura,* 544 U.S. at 342. Anyone of the foregoing would suffice to defeat the typicality of Chicago and Mr. Poole. Here they suffer from all of these unique defenses with respect to the post-December 26, 2006 portion of the Class Period.

Indeed, it is axiomatic that typicality requires that the "same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be

represented." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).  Here, nothing that defendants are alleged to have done after December 26, 2006 was "directed at or affected" Chicago or Mr. Poole.  *Ipso facto*, they are, therefore, atypical of purchasers after December 26, 2006.

Thus, while the Mehan Group does not challenge the adequacy or typicality of Chicago or Mr. Poole to represent persons who solely purchased Telik between March 27, 2003 and December 25, 2006, they cannot constitutionally represent Telik purchasers who purchased after December 26, 2006 because they had sold 100% of their respective holdings in Telik ***prior*** to the events that give rise to any claims by those Telik investors who purchased after December 26, 2006. Courts have not hesitated to reject or replace lead plaintiffs who sell before the end of a class period based on the loss causation requirement under *Dura.  See, e.g., Brooks v. Interlink Elec., Inc.*, CV 05-8133 PA (SHx), slip op, at 1-2 (C.D. Cal. July 17, 2006) (annexed hereto as Exhibit A) (rejecting proposed institutional lead plaintiff with largest financial loss because it was "'in-and-out' seller which sold all of its shares before Interlink made either of its corrective disclosures....because Westpark was not a shareholder at the time of wither of the  . . disclosures, it does not, in the Court's view, have the largest interests in the relief sought by the class.") (citing *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, No. C 03-2522 MHP, 2006 WL 1180267, at *8 (C.D. Cal. May 3, 2006)); *see also In re TDH Partners LLP v. Ryland Group, Inc.*, No. 04-cv-0073, 2006 U.S. Dist. LEXIS 36084 at **14-15 (N.D. Tex. June 2, 2006) (where "where the claims of the previously appointed lead plaintiff fail as a matter of law," court replaced lead plaintiff due to inability to show loss causation); *In re CIGNA Corp. Sec. Litig.*, No. 02-8088, 2005 U.S. Dist. LEXIS

41293 (E.D. Pa. Mar. 23, 2005) (adding additional lead plaintiffs following decision in *Dura* because originally appointed lead plaintiff could not demonstrate loss causation in connection with its CIGNA stock purchases).

The Mehan Group wishes to emphasize that neither Chicago nor Mr. Poole are disabled here from representing the Post-12/26 Class merely because they purchased earlier in the proposed Class Period. This is not the typical alleged early/late purchaser conflict that courts have routinely found insufficient to defeat class certification. *See e.g., Robbins v. Moore Med. Corp.,* 788 F. Supp. 179 (S.D.N.Y. 1992) ("whether plaintiff and other class members bought early in the class period or late, they are all alleged to have been injured by the interrelated misstatements and omissions."). The purchase dates of Chicago and Mr. Poole are not their problem. It is the fact that they **sold all of their shares in Telik** six months before the end of the alleged Class Period that creates the problem. In the usual situation, where a proposed class representative purchased early or late in a class period, that plaintiff continues to hold the shares in question to the end of the class period when the fraud is revealed. As a result, the plaintiff who purchases before a later misrepresentation has a common interest in showing the later misrepresentation continued to conceal the fraud and thereby show that the plaintiff's injury, which is typically caused by the drop in the price of the security when the truth is revealed at the end of the class period, was part of the same fraudulent scheme that injured all investors similarly, whether they purchased earlier or later in the class period. *See In re Consumers Power Co. Sec. Litig.,* 105 F.R.D. 583 608 (E.D. Mich. 1985); *see also Blackie v. Barrack,* 524 F.2d 891, 902-04 (9th Cir. 1975). Those are simply not the facts here.

By selling out before the end of the Class Period they allege, Chicago and Mr. Poole have no interest whatsoever in showing that any statements made after December 26, 2006 were false, misleading, or actionable. Since they cannot recover individually on any theory for post-December 26, 2006 events, neither Chicago nor Mr. Poole "are part of the class and 'possess the same interest and the same injury' as the class members" required of a class representative to pursue the rights of post-December 26, 2006 purchasers. *See Amchem, Prods., Inc. v. Windsor*, 521 U.S. 591, 626-27 (1997) (vacating class certification where no subgroup representative participated in negotiation of allocation of settlement fund) (quoting *East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). Rather, their interest is in showing that the revelations on December 26, 2006, which were the sole cause of their injury, resulted in there being no artificial inflation left in the stock after that date. *See In re Seagate Tech. II Sec. Litig.*, 843 F. Supp. 1341, 1364-8 (N.D. Cal. 1994) (discussing disabling conflicts between class members who sold during an alleged class period after a partial disclosures and those who held to the end of the alleged class period); *Ziemack v. Centel Corp.*, 163 F.R.D. 530, 537-41 (N.D. Ill. 1995) (same).

Notably in *Seagate Technology II*, after the court refused to certify the longer class that consisted of purchasers before and after four alleged partial disclosures based on potential conflicts between them, 843 F. Supp. at 1368, the lead plaintiff moved again for class certification, but this time based on an new class period that ended with the first partial disclosure; thus, they abandoned the interests of all those they had claimed to represent who purchased after the earliest partial disclosures. *See In re Seagate Tech. II Sec. Litig.*, 156 F.R.D. 229, 230-31 (N.D. Cal. 1994). This is precisely the risk that faced

post-December 26, 2006 Telik purchasers here if they do no have representation by a lead plaintiff who owned or purchased the stock after the first partial disclosure here on December 26, 2006.

Similarly, the conflicts facing Chicago and Mr. Poole are not solved by the out-of-date cases dealing with in-and-out traders. Prior to *Dura*, 544 U.S. at 343, so-called "ins-and-outs," (*i.e.*, those who both purchase and sell a security within a class period) had theoretical damages based on the assumption that they purchased the shares at an inflated price and, whether there was a revelation or not, they could recover the amount of artificial inflation they paid to the extent it was not fully recovered when they sold. *See Green v. Occidental Petroleum Corp.*, 541 F. 2d 1335, 1342-46 (9th Cir. 1976) (Sneed, CJ, concurring). *Dura* did away with that theory altogether. A plaintiff in a Section 10(b) action may only recover the amount of damages reflect by the drop in the price of the stock at the time the truth is revealed (or partially revealed). Therefore, those cases permitting ins-and-outs to represent those who held their shares to the end of a class period have been overruled by *Dura*.

Rather, here the Court is faced with the situation where a representative must be chosen whose purchases: (1) before and after December 26, 2006, and held those shares to the end of the Class Period on June 4, 2007), or (2) separate representation for those who purchased before December 26, 2006 and held on that day, and for those who purchased after December 26, 2006 and held to June 4, 2007. While the Mehan Group fits within both the first option and one part of the second option, Chicago and Mr. Poole clearly fit only within the one part of the second option. Where, as here, a proposed representative party is not a member of a definable subgroup, the proposed representative

cannot represent that subgroup. *See, e.g., Hoban v. USLife Credit Life Ins. Co.,* 163 F.R.D. 509, 514 (N.D. Ill 1995). *accord Amchem,* 521 U.S. at 627 (rejecting over-sized class without discreet subclass representatives, stating that "[w]here differences among members of a class are such that subclasses must be established, we know of no authority that permits a court to approve a settlement without creating subclasses on the basis of consents by members of a unitary class, some of whom happen to be members of a distinct subgroup.")(quoting *In re Joint E. & S. Dist. Asbestos Litig.,* 982 F. 2d 721, 742-43 (2d Cir. 1992), *modf'd on reh'g,* 993 F. 2d 7 (2d Cir. 1993)).

For this reason, while the Mehan Group has claims that are typical of all members of the alleged Class, as well as the Post-12/26 Class, and neither Chicago nor Mr. Poole have claims that are typical of all members of the Class because they do not have claims that are typical of the claims of the Post-12/26 Class members. *See, e.g., Gen. Tel. of the Southwest v. Falcon,* 457 U.S. 147, 157-159 (1982) (decertifying class where class consisted of two distinct groups within a single class and class representative was only a member of one of the groups and therefore atypical of members of the other group). Therefore, neither Chicago nor Mr. Poole can be appointed lead plaintiff to represent those Telik investors who purchased after December 26, 2006. *See* 15 U.S.C. § 78u-4(a)((3)(B)(iii)(II).

### B.    Chicago and Mr. Poole Are Not Adequate To Represent The Interests of Post-12/26/06 Telik Purchasers

Likewise, "adequacy of representation . . . 'serves as a guidepost for determining whether …maintenance of a class action is economical and whether the named plaintiff's claim and are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Amchem,* 521 U.S. at 626 (reversing class

certification because "[i]n significant respects, the interests of those within the single class are not aligned.") (quoting *Gen. Tel. of the Southwest,* 457 U.S. at 157 n. 13) (decertifying class where class consisted of two distinct subgroups and class representative was only a member of one of the subclass and therefore atypical of members of the other subgroup).

Where a definable subclass exists within an alleged class, "a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall be then construed and applied accordingly." Fed. R. Civ. P. 23(c)(4)(B). Each subclass must be represented by a class representative with standing to protect and an interest in protecting those unique interests. *See In re Simon II Litig.,* No. 98-cv-0675, 2002 U.S. Dist. LEXIS 25632, at *287 (E.D.N.Y. October 22, 2002) (citing *Amchem,* 521 U.S. at 625). "Appropriate subclasses are necessary to insure that all class members have had their interests properly represented." *Id* (citing *Joint E. & S. Dist. Asbestos Litig.,* 982 F.2d at 743); *see also Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 856 (1999) (Supreme Court stated that subclasses must be established to distinguish between those class members with present and future claims. Each subclass requires separate class representatives and counsel to eliminate any conflicts of interest).

Specifically, in securities cases, courts have held that subclasses are appropriate when plaintiffs "have a substantial antagonism towards the positions of others in the class." *In re Lucent Techs., Inc. Sec. Litig.,* 221 F. Supp. 2d 472, 483-88 (D.N.J. 2001) (citing *In re PHLCORP Sec. Litig.,* 1989 U.S. Dist. LEXUS 13681, at *2 (S.D.N.Y. Nov. 16, 1989)). Here, if this Court decides to appoint Chicago or Mr. Poole as lead plaintiff, a subclass is still necessary to provide adequate representation for those members of the

Class who purchased Telik securities between December 26, 2006 and June 4, 2007. Indeed, where obvious divisions exist within a proposed class, courts have not hesitated to appoint separate lead plaintiffs and separate class counsel to represent the distinct members of a class. *See, e.g., Miller v. Ventro Corp.*, No. 01 Civ. 1287, 2001 U.S. Dist. LEXIS 26027 at *11-12 (N.D. Cal. Nov. 28, 2001) (appointing as co-lead plaintiffs as separate movants in order to ensure that the distinct classes proposed in various consolidated actions involving both bondholders and stockholders were adequately represented). For instance, in *In re Lucent,* 221 F. Supp. 2d 472, ten months following the appointment of lead plaintiff in connection with the filing of *Lucent I*, Lucent issued additional negative information, and a second wave of securities class actions was filed against the defendants. The original lead plaintiff appointed in *Lucent I* argued it should be the lead plaintiff for the claims arising from the later revelations as well as the earlier disclosures. Plaintiffs that filed *Lucent II* argued they should have separate representation. *See id.,* at 481-82. The *Lucent* court determined that, notwithstanding the *Lucent II* plaintiffs' arguments that there were "differing claims" over "differing time periods," there were common questions of law or facts sufficient to consolidate the two actions under Fed. R. Civ. P. 42. The *Lucent* court, however, also concluded that "additional representation may benefit the class" and appointed a co-lead plaintiff and co-lead counsel to represent the interests of those in the later class period. *Id.,* at 483.

Again, for reasons stated above, although Chicago and Mr. Poole purport to have larger losses than the Mehan Group, and are therefore afforded the presumption of most adequate plaintiff, this presumption is rebutted if they are inadequate representatives of the entire class they seek to represent. Further, not only do they lack the claim of those

who purchased Telik shares after the December 26, 2006 announcement because they ceased to be Telik investors, both Chicago and Mr. Poole have potential serious conflicts of interest with those members of the Class who purchased after-December 26, 2006. Pre-December 26, 2006 purchasers will want to show the largest amount of artificial inflation existed in Telik stock before December 26, 2006, while post-December 26, 2006 purchasers will want to show a greater amount of inflation persisted after December 26, 2006. While, on its face, this would appear to only be a difference in the amount of damages Class members will seek, the absence of any incentive on the part of Chicago or Mr. Poole to prove any artificial inflation persisted in the price of Telik shares after December 26, 2006 mandated that Post-12/26 Class members have separate, vigorous representation.

Without separate representation, absent Post 12/26 Class members will have no way to protect their interests from a solo lead plaintiff who not only lacks the same claims as them, but has an interest in diminishing the value of that claim. *Cf Amchem*, 521 U.S. at 641 (reversing class certification, inter alia, because no one with particular claims was appointed as class representatives to protect the interests of those subgroups). As Judge Brient in *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42 (S.D.N.Y. 1998), instructed:

> The rebuttable presumption created by the PSLRA which favors the plaintiff with the largest financial interest was not intended to obviate the principle of providing the class with the most adequate representation and in general the Act must be viewed against established principles regarding Rule 23 class actions. Allowing for diverse representation, including in this case a state pension fund, significant individual investors and a large institutional investor, ensure that the interests of all class members will be adequately represented...

*Id.,* at 49 (appointing the three class members with the most losses as lead plaintiffs to

obtain balanced representation).

Clearly, as neither Chicago nor Mr. Poole is an adequate representative of the entire alleged Class or the Post-December 26, 2006 Class, the Court should, therefore, either appoint the Mehan Group, which purchased both before and after December 26, 2006, and held Telik shares past the end of the Class Period as lead plaintiff for the entire alleged Class, or appoint either Chicago or Mr. Poole as lead plaintiff to the represent pre-December 26, 2006 purchasers of Telik who sold after December 26, 2006, and the Mehan Group to represent the Post-12/26 Class.

**C.    The Mehan Group Is The Most Adequate Plaintiff**

The appointment of the Mehan Group as lead plaintiff in this action is supported by the PSRLA.  The PSLRA directs the Court to appoint as lead plaintiff the movant that has the largest financial interest in the litigation and also satisfies the typicality and adequacy requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B).  The Mehan Group has the largest financial interest of any movant that is qualified to seek appointment as lead plaintiff for the 12/26 Class and is the movant most capable of adequately representing all segments of the Class, including the Post-12/26 Class in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(i).

Moreover, in contrast to Chicago and Mr. Poole, the Mehan Group *prima facie* satisfies Rule 23.  The Mehan Group purchased Telik shares throughout the entire Class Period and continued to hold a substantial number of those share after the end of the Class Period and the final revelations on June 5, 2007.  Therefore, the Mehan Group has claims that are typical of all Class members.  The Mehan Group has interests that are aligned with those of all members of the Class and not just a portion of the Class as is the

case with Chicago and Mr. Poole.

Likewise, the Mehan Group is adequate as it has no interests in the outcome of the litigation that are antagonistic to any Class members; indeed, it is the movant with the largest financial interest that has an incentive to vindicate the claims of all Class members for the entire alleged Class Periods. As such, it can be expected to vigorously pursue the claims of all Class members, and not favor one period over another as Chicago and Mr. Poole have a personal pecuniary incentive to do. Further demonstrating the Mehan Group's adequacy, as demonstrated by the sworn certification attesting to its transactions in Telik securities, it also has acknowledged its understanding of the duties as lead plaintiff, and its willingness to satisfy those duties.

The Mehan Group has also retained competed and experienced counsel located in this district, Brower Piven, to serve as class counsel, whose attorneys have vast experience in successfully prosecuting complex securities actions and are well qualified to represent the Class. [2]

Accordingly, the Mehan Group is the prototypical lead plaintiff as defined by the PSLRA, and should be appointed as lead or co-lead plaintiff and its choice of counsel approved as lead or co-lead counsel.

## IV.    CONCLUSION

For all foregoing reasons, the Mehan Group respectfully requests that this Court: (1) grant the Mehan Group's motion for appointment as lead plaintiff for the Class, or co-

---

[2]    Consistent with its obligations to absent Class members, prior to moving for lead plaintiff and selecting Brower Piven to serve as class counsel, the Mehan Group negotiated a fee arrangement with Brower Piven that caps Brower Piven's potential fees, if appointed as lead counsel, limiting those fees to various percentages of a recovery based on various scenarios).

lead plaintiff for the 12/26 Class in this Action; (2) approve the Mehan Group's selection

of class counsel, Brower Piven; and (3) grant such other and further relief as the Court

may deem just and proper.


Dated: August 20, 2007

<div style="margin-left:40%">

Respectfully submitted,


**BROWER PIVEN**
A Professional Corporation

By: /s/ Elizabeth A. Schmid

David A.P. Brower (DB-4923)
Elizabeth A. Schmid (ES-1294)
488 Madison Avenue
Eighth Floor
New York, New York 10022
Telephone: (212) 501-9000
Facsimile: (212) 501-0300

*Proposed Liaison Counsel For
The Mehan Group and the Class*

**BROWER PIVEN**
A Professional Corporation
Charles J. Piven
Marshall N. Perkins
World Trade Center-Baltimore
401 East Pratt Street, Suite 2525
Baltimore, Maryland 21202
Telephone: (410) 332-0030
Facsimile: (410) 685-1300

*Proposed Lead Counsel for the
Mehan Group and the Class*

</div>