UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE TELIK, INC.<br>SECURITIES LITIGATION | )<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 07-cv-04819 (CM) |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

Stanley D. Bernstein
Mel E. Lifshitz
Timothy J. MacFall
Joseph R. Seidman, Jr.
**BERNSTEIN LIEBHARD & LIFSHITZ, LLP**
10 E. 40th St
New York, New York 10016
(212) 779-1414

*Counsel for Lead Plaintiff and the Class*

18331v3

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ...................................................................................... 1

I.    RELEVANT FACTS ........................................................................................... 3

II.   THE COURT SHOULD AWARD THE REQUESTED ATTORNEYS' FEES ............... 3

A.    The Percentage Of Recovery Methodology Is The Most Efficient And Logical
      Means For Calculating Counsel's Fees............................................................ 3

B.    The Requested Attorneys' Fees are Fair and Reasonable Under Either The
      Percentage or the Lodestar/Multiplier Method ................................................ 7

      1.    The Requested Fees Are Reasonable  Under the Percentage Method ..................... 7

      2.    The Requested Fees Are Reasonable  Under the Lodestar Cross-Check ............... 9

            (i)    The Number of Hours Worked by Plaintiffs' Counsel In
                   Connection With This Litigation Was Reasonable...................................... 9

            (ii)   The Rates Charged By Plaintiffs' Counsel Are Reasonable..................... 11

            (iii)  The Requested Multiplier Is Low ............................................................. 12

C.    The Requested Attorneys' Fees Are  Reasonable Based On The Second Circuit
      Criteria .......................................................................................................... 13

      1.    The Significant Time And Labor Expended By Counsel To Produce A
            Settlement Supports The Fee Requested By Plaintiffs' Counsel........................... 14

      2.    The Magnitude And Complexity Of This Litigation Support The Award
            Of The Fee Requested By Plaintiffs' Counsel....................................................... 16

      3.    The Substantial Risks to Plaintiffs' Recovery  Fully Support The Fee
            Requested By Lead Counsel ................................................................................. 16

            (i)    Litigation Risks....................................................................................... 18

      4.    The Quality Of Plaintiffs' Counsel's Representation Of The Class
            Supports The Fee Requested.................................................................................. 19

      5.    The Fee Requested By Is Fair In Relation To The Settlement Amount ................. 21

      6.    Public Policy Considerations Fully Support The Fee Requested ......................... 21

D.     Only One Class Member Has Objected to the Requested Fee............................................23

III.    THE REQUEST FOR REIMBURSEMENT OF EXPENSES IS REASONABLE..........24

CONCLUSION............................................................................................................................25

## TABLE OF AUTHORITIES

Page

## CASES

*Adair v. Bristol Tech. Sys., Inc.*,
No. 97 Civ 5874 (RWS), 1999 WL 1037878 (S.D.N.Y. Nov. 16, 1999)............................8, 21

*AUSA Life Ins. Co. v. Ernst & Young*,
39 Fed. Appx. 667, 669 (2d Cir. 2002).....................................................................................18

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)..............................................................................................................4, 23

*Blum v. Stenson*,
465 U.S. 886 (1984)....................................................................................................................11

*Cherner v. Transitron Electric Corp.*,
221 F. Supp. 55 (D. Mass. 1963) ...............................................................................................18

*Faircloth v. Certified Finance Inc.*,
No. 99-3097, 2001 WL 527487 (E.D. La. May 16, 2001)...........................................................8

*Gaskill v. Gordon*,
942 F. Supp. 382 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998)......................................8

*Gierlinger v. Gleason*,
160 F.3d 858 (2d Cir. 1998)........................................................................................................11

*Goldberger v. Integrated Resources, Inc.*,
209 F.3d 43 (2d Cir. 2000)............................................................................................... *passim*

*Hicks v. Stanley*, No. 01 Civ.10071 (RJH),
2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ...........................................................7, 22

*In re America Bank Note Holographics, Inc. Sec. Litigation*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)........................................................................ 3, 5, 6, 24

*In re Ampicillin Antitrust Litigation*,
526 F. Supp. 494 (D.D.C. 1981) ..................................................................................................9

*In re APAC Teleservices, Inc. Sec. Litig.*,
No. 97 Civ 9145 (BSJ), 1999 WL 1052004 (S.D.N.Y. Nov. 19, 1999) ....................................7

*In re Ashanti Goldfields Sec. Litigation,*
  Civ. 00-717 (DGT), 2005 WL 3050284 (E.D.N.Y. Nov. 15, 2005).......................................22

*In re BankAmerica Corp. Sec. Litigation,*
  228 F. Supp. 2d 1061 (E.D. Mo. 2002)..................................................................................12

*In re Blech Sec. Litig.,*
  94 Civ. 7696 (RWS), 95 Civ. 6422 (RWS), 2000 WL 661680 (S.D.N.Y. May 19,
  2000) ...............................................................................................................................5

*In re Blech Sec. Litigation,*
  No. 94-7696, 2002 WL 31720381 (S.D.N.Y. Dec. 4, 2002) ...................................................21

*In re Bristol-Myers Squibb Sec. Litigation,*
  361 F. Supp. 2d 229 (S.D.N.Y. 2005).....................................................................................22

*In re Continental Ill. Sec. Litigation,*
  962 F.2d 566 (7th Cir. 1992) ...................................................................................................3

*In re Corel Corp. Inc. Sec. Litigation,*
  293 F. Supp. 2d 484 (E.D. Pa. 2003) .......................................................................................8

*In re Crayfish Co. Sec. Litigation,*
  No. 00-6766 (S.D.N.Y. July 28, 2004) .....................................................................................7

*In re Crazy Eddie Sec. Litigation,*
  824 F. Supp. 320 (E.D.N.Y. 1993) .........................................................................................24

*In re Engineering Animation Sec. Litigation,*
  203 F.R.D. 417 (S.D. Iowa 2001).............................................................................................8

*In re EVCI Career Colleges Holding Corp. Sec. Litigation,*
  No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .......................3, 6, 13

*In re General Instrument Sec. Litigation,*
  209 F. Supp. 2d 423 (E.D. Pa. 2001) .......................................................................................8

*In re Indep. Energy Holdings PLC Sec. Litig.,*
  No. 00 Civ. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)..............................12

*In re Linerboard Antitrust Litigation, Number MDL 1261,*
  2004 WL 1221350 (E.D. Pa. June 2, 2004).............................................................................13

*In re Medical X-Ray Film Antitrust Litigation,*
  No. 93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ................................................20, 21

*In re NASDAQ Market-Makers Antitrust Litigation,*
  187 F.R.D. 465 (S.D.N.Y. 1998) .......................................................................11, 12, 20, 24

*In re Neoware System, Inc. Sec. Litigation,*
  No. 98 Civ. 2582, 2000 WL 1100871 (E.D. Pa. July 27, 2000) ................................................8

*In re Pac. Enterprises Sec. Litigation,*
  47 F.3d 373 (9th Cir. 1995) ................................................................................................9

*In re Plug Power, Inc. Sec. Litigation,*
  No. 00-5553 (E.D.N.Y. Apr. 29, 2005) .................................................................................7

*In re Prudential Sec. Inc. Ltd. P'ships Litigation,*
  912 F. Supp. 97 (S.D.N.Y. 1996) .........................................................................................2

*In re Prudential Sec. Inc. Ltd. P'ships Litigation,*
  985 F. Supp. 410 (S.D.N.Y. 1997) ...................................................................................9, 13

*In re Ravisent Technologies, Inc. Sec. Litigation,*
  No. 00 Civ. 1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ................................................8

*In re Safety Components International, Inc. Sec. Litigation,*
  166 F. Supp. 2d 72 (D.N.J. 2001) ........................................................................................8

*In re Sumitomo Copper Litigation,*
  74 F. Supp. 2d 393 ....................................................................................................5, 6, 15

*In re Twinlab Corp. Sec. Litig.,*
  187 F. Supp. 2d 80 (E.D.N.Y. 2002) .....................................................................................5

*In re Union Carbide Corp. Consumer Products Business Sec. Litigation,*
  724 F. Supp. 160 (S.D.N.Y. 1989) ......................................................................................14

*In re Unisys Corp. Sec. Litigation,*
  No. 99-5333, 2001 WL 1563721 (E.D. Pa. Dec. 6, 2001) .......................................................8

*In re Visa Check/Mastermoney Antitrust Litigation,*
  297 F. Supp. 2d 503 (E.D.N.Y. 2003) .................................................................................22

*In re Winstar Commc'ns Sec. Litigation,*
  No. 01-3014 (S.D.N.Y. Dec. 29, 2004) .................................................................................7

*Klein ex rel. Ira v. PDG Remediation, Inc.,*
  No. 95 Civ. 4954, 1999 WL 38179 (S.D.N.Y. Jan. 28, 1999)............................................6, 21

*Kogan v. AIMCO Fox Chase, L.P.*,
   193 F.R.D. 496 (E.D. Mich. 2000) .................................................................................9

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748 (2d Cir. 1998)..................................................................................11, 25

*Luciano v. Olsten Corp.*,
   109 F.3d 111 (2d Cir. 1997)........................................................................................11

*Maley v. Del Global Technologies Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................ *passim*

*Maywalt v. Parker & Parsley Petroleum Co.*,
   963 F. Supp. 310 (S.D.N.Y. 1997), *aff'd sub nom. Olick v. Parker & Parsley*
   *Petroleum Co.*, 145 F.3d 513 (2d Cir. 1998) ...................................................... 21, 23

*Missouri v. Jenkins*,
   491 U.S. 274 (1989), *aff'd sub nom. Jenkins v. Missouri*, 931 F.2d 1273 (8th Cir. Mo.
   1991) ...........................................................................................................................11

*Muehler v. Land O'Lakes, Inc.*,
   617 F. Supp. 1370 (D. Minn. 1985) .............................................................................8

*Neuberger v. Shapiro*,
   110 F. Supp. 2d 373 (E.D. Pa. 2000) ..........................................................................8

*Newman v. Caribiner International, Inc.*,
   No. 99-2271 (S.D.N.Y. Oct. 22, 2001) ......................................................................21

*Ressler v. Jacobson*,
   149 F.R.D. 651 (M.D. Fla. 1992)..........................................................................22, 24

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*,
   No. 94 Civ. 5587 (PKL), 2003 WL 21136726 (S.D.N.Y. May 15, 2003).................7

*Robbins v. Koger Properties Inc.*,
   116 F.3d 1441 (11th Cir. 1997) .................................................................................18

*Savoie v. Merchant Bank*,
   166 F.3d 456 (2d Cir. 1999)........................................................................................5

*Schnall v. Annuity & Life Re (Holdings), Ltd.*,
   No. 02-2133 (D. Conn. Jan. 21, 2005).........................................................................7

*Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*,
   148 Fed. Appx. 66, 99 (2d Cir. 2005).......................................................................18

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,*
     258 F. Supp. 2d 254 (S.D.N.Y. 2003)..................................................................................9

*Teachers' Retirement System of La. v. A.C.L.N., Ltd.,*
     No. 01 CV 11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004).....................10, 20, 24

*Trustees v. Greenough,*
     105 U.S. 527 (1882)...................................................................................................3

## FEDERAL STATUTES

15 U.S.C. § 78u-4(a)(6) .................................................................................................6

## PRELIMINARY STATEMENT

Counsel for Lead Plaintiff Policemen's Annuity and Benefit Fund for the City of Chicago

("Lead Plaintiff") and the Class, Bernstein Liebhard & Lifshitz, LLP, respectfully submit this

memorandum in support of Plaintiffs' application for an award of attorneys' fees and

reimbursement of expenses incurred in prosecuting this class action litigation (the "Litigation").[1]

The parties have presented an agreement to settle the Action (the "Settlement") in exchange for

the Telik Defendants' payment of $5,000,000 in cash (the "Settlement Fund").[2] The Settlement

presents a commendable result for the investor Class in a very challenging case.[3]

Lead Counsel now submits this petition requesting a fee award of 25% of the Settlement

Fund, reimbursement of the expenses reasonably incurred in connection with the prosecution of

---

[1] By Order dated May 7, 2008, this Court certified a class, for settlement purposes (the "Class"), consisting of all Persons who purchased the common stock of Telik, Inc. during the period February 19, 2004 through and including June 4, 2007. Excluded from the Class are the Underwriter Defendants (with respect to their own accounts, but not with respect to accounts held for the benefit of others) and the Telik Defendants, any entity in which Defendants or any excluded person has or had a controlling ownership interest, the officers and directors of Telik, members of their immediate families, and the legal affiliates, representatives, heirs, controlling persons, successors, and predecessors in interest or assigns of any such excluded party. The Settlement Class shall also exclude those Persons who timely and validly request exclusion from the Settlement Class pursuant to the Notice of Pendency and Proposed Settlement of Class Action to be sent to the class. Stipulation ¶1.23.

[2] Telik, Inc. ("Telik") and Telik officers Michael M. Wick and Cynthia M. Butitta are referred to as the "Telik Defendants". "Defendants" refers to the Telik Defendants, as well as UBS Securities LLC, Lehman Brothers Inc., and J.P. Morgan Securities Inc.

[3] Submitted contemporaneously herewith are: the Memorandum in Support of the Final Approval of the Settlement, Final Certification of Class for Settlement Purposes, and Final Approval of the Plan of Allocation (the "Settlement Memorandum"), and the Supporting Declarations of Timothy J. MacFall ("MacFall Decl.") and Joseph R. Seidman, Jr. ("Seidman Decl."). The MacFall Declaration fully describes the history of the Action, the claims asserted, the efforts of Counsel, and the negotiations leading to the Settlement set forth in the Stipulation. The Settlement Memorandum sets forth the arguments for the final approval of the Settlement, as well as the structure of, and basis for, the Plan of Allocation. All terms not otherwise defined have the definitions set forth in the Stipulation.

the Action, and applicable interest. As noted, this is substantially ($410,000) less than the 30%

maximum award specified in the Notice. The PSLRA provides that class counsel are entitled to

attorneys' fees representing a "reasonable percentage" of the damages paid to Class members.

The 25% fee is well within the range of many fees awarded by this Court and by others in this

Circuit. *See infra* at 7-9.

Utilizing the market guidelines endorsed by the Second Circuit, the requested fee is

reasonable and eminently fair. It is wholly warranted in light of, among other things, the

excellent result achieved in a very difficult case. The 25% fee requested by Counsel − $1.25

million − represents a multiplier of approximately 1.6 times Counsel's lodestar of $779,297.75.

MacFall Declaration ¶61. Thus, even using the lodestar/multiplier basis as a guideline, the

requested fee is reasonable and fair, as similar multipliers have been repeatedly awarded in

securities class actions by courts in this Circuit and elsewhere. *See infra* at 9-13.

The reaction of the Class also strongly endorses the Settlement and Counsel's fee request.

More than 54,000 copies of the Notice of Pendency and Proposed Settlement of Class Action

(the "Notice") were mailed to the members of the Class.[4] MacFall Declaration ¶35. The Notice

described the Settlement and notified Class members of Counsel's intention to apply for

attorneys' fees of up to 30% of the Settlement Fund and for expenses up to $125,000. Only one

Class member has objected to the fee request. MacFall Declaration ¶62. In other words, the

Class overwhelmingly approves of the fee request.

---

[4] *See* Affidavit of Jennifer Keough re:  (A) Mailing of the Notice of Pendency and Proposed
Settlement of Class Action; (B) Proof of Claim and Release Form; and (C) Publication of
Summary Notice, dated August 15, 2008 ("Keough Affidavit"), at ¶9 (annexed to MacFall
Declaration as Ex. D).

For the reasons set forth below and in the Declaration, Counsel respectfully submit that the requested attorneys' fees and the expenses sought are fair and reasonable under the applicable legal standards, in light of the contingency risk undertaken, the recoverability obstacles overcome and the results achieved. Accordingly, the application should be approved by the Court.

## I.    RELEVANT FACTS

The facts relevant to Plaintiffs' Counsel's motion are set forth in detail in the accompanying MacFall Declaration and the Settlement Memorandum. For the sake of brevity, the facts will not be repeated, but are incorporated by reference herein.

## II.    THE COURT SHOULD AWARD THE REQUESTED ATTORNEYS' FEES

### A.    The Percentage Of Recovery Methodology Is The Most Efficient And Logical Means For Calculating Counsel's Fees

Pursuant to the "'equitable' or 'common fund' doctrine established more than a century ago" in *Trs. v. Greenough*, 105 U.S. 527, 532-33 (1882), "attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work." *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001) (McMahon, J.); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *15 (S.D.N.Y. July 27, 2007) (McMahon, J.) ("The Supreme Court has recognized that a lawyer who recovers a common fund for the benefit of persons other [than] his client is entitled to a reasonable attorney's fee from the fund as a whole") (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). Fees and expenses are paid from the common fund so that all class members contribute equally towards the costs associated with litigation pursued on their behalf. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (the common fund doctrine "prevents unjust enrichment of those

benefitting from a lawsuit without contributing to its cost"); *Am. Bank Note*, 127 F. Supp. 2d at 430 ("[T]he costs of litigation should be spread among the fund's beneficiaries.").

Courts have also recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature. *See Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (McMahon, J.). The Supreme Court has emphasized that private securities actions, such as this one, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (citation omitted).

In *Goldberger*, the Second Circuit emphasized the need for fee awards to plaintiffs' counsel to be fair and reasonable, and described two forms of fee calculation methodologies – the first used as a check for reasonableness, the latter serving as the preferred method. The first is the "lodestar" method, where "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Goldberger*, 209 F.3d at 47. Once the lodestar is calculated, the court "may, in its discretion, increase the lodestar by applying a multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys." *Id.* (citation omitted).

The second methodology for calculating fees is the "percentage of recovery" method. *Id.* As the *Goldberger* court noted, "[i]n determining what percentage to award, courts have looked to the same 'less objective' factors that are used to determine the multiplier for the lodestar." *Id.* Because the percentage of recovery approach does not require courts to "exhaustively scrutinize[]" attorneys' time records, that methodology is "simpler" than the lodestar approach.

*Id.* at 50; *see also id.* at 48-49 (the "primary source of dissatisfaction" with the lodestar methodology "was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits").

The advantages of the percentage of recovery methodology led the *Goldberger* court to reaffirm the Second Circuit's view that it is an accepted means for calculating attorneys' fees in class actions. *Id.* at 49 ("the percentage-of-the-fund method is a viable alternative") (quoting *Savoie v. Merch. Bank*, 166 F.3d 456, 460 (2d Cir. 1999)). Indeed, the court held that as long as utilizing the percentage of recovery methodology does not produce an "unwarranted windfall[]" to counsel, there is "no need to compel district courts to undertake the 'cumbersome, enervating, and often surrealistic process' of lodestar computation." *Goldberger*, 209 F.3d at 49-50 (quoting *Savoie*, 166 F.3d at 461 n.4). The court also decided: (a) not to prohibit district courts from calculating attorneys' fees utilizing a lodestar approach (as some Courts of Appeal had done); and (b) to "encourage" the analysis of counsel's lodestar "as a 'cross check' on the reasonableness of the requested percentage." *Goldberger*, 209 F.3d at 50 (citation omitted).

Both before and after the *Goldberger* opinion, the administrative problems associated with the lodestar method, and the advantages presented by the percentage of recovery approach,[5] led most district courts in this Circuit to adopt the percentage of recovery methodology.[6] That

---

[5] From a policy perspective, courts have continually recognized that the percentage of recovery approach "is attractive because it directly aligns the interests of the Class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation, which clearly benefits both litigants and the judicial system." *Am. Bank Note*, 127 F. Supp. 2d at 431-32").

[6] *See, e.g., Am. Bank Note*, 127 F. Supp. 2d at 431 ("[T]he trend of the district courts in this Circuit is to use the percentage of the fund approach to calculate attorneys' fees"); *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 85 (E.D.N.Y. 2002) ("The trend in the Second Circuit is to use the percentage method") (citing *Am. Bank Note*, 127 F. Supp. 2d at 431); *In re Blech Sec. Litig.*, 94 Civ. 7696 (RWS), 95 Civ. 6422 (RWS), 2000 WL 661680, at *5 (S.D.N.Y. May 19,

trend is consistent with the national precedent concerning this issue.[7]  Moreover, the percentage

of recovery approach is consistent with the federal securities laws' requirement that attorneys'

fees in securities class actions not "'exceed a reasonable *percentage* of the amount of any

damages and prejudgment interest actually paid to the class.'"  *Am. Bank Note*, 127 F. Supp. 2d

at 430 (quoting 15 U.S.C. § 78u-4(a)(6).  Indeed, the PSLRA expressly provides that class

counsel are entitled to attorneys' fees representing a "reasonable percentage" of the damages

recovered by the class.  *See* 15 U.S.C. § 78u-4(a)(6).  Thus, Congress plainly contemplated that

percentage-of-the-recovery would be the primary measure of attorneys' fees awards in federal

securities class actions.

    This Court recently confirmed that the percentage method continues to be the trend of

district courts in this Circuit and that it "has been expressly adopted in the vast majority of

circuits."  *EVCI*, 2007 WL 2230177, at *16 n.3 (collecting cases).  This Court observed:  "For

many years, courts within this Circuit recognized that "[s]upport for the lodestar/multiplier

approach in common fund cases had eroded, and there has been a 'groundswell of support for

*mandating* a percentage-of-the-fund approach' in the common fund cases."  *Id.*, 2007 WL

2230177, at *16 n.3 (citation omitted; emphasis in original).

---

2000) ("This Court . . . continues to find that the percentage of the fund method is more
appropriate than the lodestar method for determining attorney's fees in common fund cases."); *In
re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 ("Support for the lodestar/multiplier
approach in common fund cases has eroded, and there has been a 'ground swell of support for
mandating a percentage-of-the-fund approach' in the common fund cases.") (citation omitted);
*Klein ex rel. Ira v. PDG Remediation, Inc.*, No. 95 Civ. 4954, 1999 WL 38179, at *3 (S.D.N.Y.
Jan. 28, 1999) ("The lodestar approach has been criticized, and courts now favor awarding
counsel in common fund cases . . . a percentage of the settlement fund.").

[7] *See, e.g., Maley*, 186 F. Supp. 2d at 370 (S.D.N.Y. 2002) ("[T]here is a strong consensus – both
in this Circuit and across the country – in favor of awarding attorneys' fees in common fund
cases as a percentage of the recovery."); *Am. Bank Note*, 127 F. Supp. 2d at 430 ("In recent
years, a majority of the Circuit courts have approved the percentage-of-the-fund method.").

Accordingly, consistent with the approach adopted by the *Goldberger* court, the practice of most district courts in this Circuit, and the provisions of the federal securities laws, Lead Counsel respectfully submit that the percentage of recovery approach is the appropriate methodology for awarding attorneys' fees in this action. Furthermore, in this memorandum and the accompanying Declaration, Lead Counsel demonstrates that a "cross-check" with a lodestar analysis also supports the fee requested.

**B.    The Requested Attorneys' Fees are Fair and Reasonable Under Either The Percentage or the Lodestar/Multiplier Method**

The requested fee award is fair and reasonable under either the percentage of the fund *or* the "lodestar/multiplier" approach. Plaintiffs' Counsel request a fee award of 25% of the Gross Settlement Fund, plus interest. The requested fee is well within the range of fees approved by courts in this Circuit and elsewhere, under the percentage and the lodestar/multiplier approaches, especially for settlements near the size of the $5 million settlement achieved here.

**1.    The Requested Fees Are Reasonable Under the Percentage Method**

On a percentage basis, the amount of attorneys' fees requested is less than the attorneys' fees awards made by courts in this District and other courts within the Second Circuit.[8]

---

[8] *See, e.g., In re Crayfish Co. Sec. Litig.*, No. 00-6766 , slip op. at 7 (S.D.N.Y. July 28, 2004) (awarding 30% of $9 million settlement, plus expenses); *Hicks v. Stanley*, No. 01 Civ.10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) (awarding 30% of $10 million settlement, plus expenditures); *In re Plug Power, Inc. Sec. Litig.*, No. 00-5553, slip op. at 7 (E.D.N.Y. Apr. 29, 2005) (awarding 30% of $5 million settlement, plus expenses); *Schnall v. Annuity & Life Re (Holdings), Ltd.*, No. 02-2133, slip op. at 8 (D. Conn. Jan. 21, 2005) (awarding 33 1/3% of $16.5 million settlement, plus expenses); *In re Winstar Commc'ns Sec. Litig.*, No. 01-3014, slip op. at 2 (S.D.N.Y. Dec. 29, 2004) (awarding 30% of $12 million settlement, plus expenses); *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587 (PKL), 2003 WL 21136726, at *2 (S.D.N.Y. May 15, 2003) (awarding 33 1/3% of $975,000 settlement plus reimbursement of expenses); *Maley*, 186 F. Supp. 2d at 367-68 (awarding 33 1/3% of $1.25 million settlement, plus $200,371.93 for costs and expenses); *In re APAC Teleservices, Inc. Sec. Litig.*, No. 97 Civ. 9145 (BSJ), 1999 WL 1052004, at *1 (S.D.N.Y. Nov.

The requested fee is also less than the fee awards in many cases such as this throughout the rest of the country. *See, e.g.*, *In re Ravisent Techs., Inc. Sec. Litig.*, No. 00 Civ. 1014, 2005 WL 906361, at *15 (E.D. Pa. Apr. 18, 2005) (awarding attorneys' fees of one-third of $7 million settlement); *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 497 (E.D. Pa. 2003) ("[T]he 33 ⅓% fee request in this complex case is within the reasonable range."); *Faircloth v. Certified Fin. Inc.*, No. 99-3097, 2001 WL 527487, at *12 (E.D. La. May 16, 2001) (awarding attorneys' fees of 35% of settlement plus interest and reimbursement of expenses); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 439 (E.D. Pa. 2001) (awarding attorneys' fees of one-third of settlement as "fair and reasonable," plus reimbursement of expenses); *In re Eng'g Animation Sec. Litig.*, 203 F.R.D. 417, 423-24 (S.D. Iowa 2001) (awarding attorneys' fees of $2.5 million, or one third of common fund, plus expenses); *In re Neoware Sys., Inc. Sec. Litig.*, No. 98 Civ. 2582, 2000 WL 1100871, at *3-4 (E.D. Pa. July 27, 2000) (awarding counsel fees of approximately one-third of each of two settlement funds, plus a proportionate share of interest accrued and reimbursement of expenses); *In re Unisys Corp. Sec. Litig.*, No. 99-5333, 2001 WL 1563721, at *3-4 (E.D. Pa. Dec. 6, 2001) (approving one-third fee sought by plaintiffs' counsel as fair and reasonable); *In re Safety Components Int'l, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 101-102 (D.N.J. 2001) (approving fee request of one-third of $4.5 million settlement); *Neuberger v. Shapiro*, 110 F. Supp. 2d 373, 386 (E.D. Pa. 2000) (approving one third of $4,325,000 settlement fund); *Gaskill v. Gordon*, 942 F. Supp. 382, 387-88 (N.D. Ill. 1996) (awarding 38% of the settlement fund), *aff'd*, 160 F.3d 361 (7th Cir. 1998); *Muehler v. Land O'Lakes, Inc.*, 617 F.

---

19, 1999) (awarding 33 1/3% of $21 million settlement); *Adair v. Bristol Tech. Sys., Inc.*, No. 97 Civ. 5874 (RWS), 1999 WL 1037878, at *3 (S.D.N.Y. Nov. 16, 1999) (awarding requested counsel fee of 33% of the $975,000 settlement fund, and finding that "Courts in this District have previously awarded fees at or exceeding this level on numerous occasions").

Supp. 1370, 1380-81 (D. Minn. 1985) (awarding attorneys' fees of 35% of settlement recovery);

*In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 500 (D.D.C. 1981) (awarding attorneys' fees

of 45% of settlement recovery); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995)

(awarding attorneys' fees of 33% of total recovery); *Kogan v. AIMCO Fox Chase, L.P.*, 193

F.R.D. 496, 503 (E.D. Mich. 2000) (awarding attorneys' fees of one-third of common fund).

### 2.    The Requested Fees Are Reasonable Under the Lodestar Cross-Check

As noted above, the Second Circuit has "encourage[d]" an analysis of counsel's lodestar

"as a 'cross check' on the reasonableness of the requested percentage." *Goldberger*, 209 F.3d at

50 (citation omitted); *accord, e.g.*, *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F.

Supp. 2d 254, 263 (S.D.N.Y. 2003) (same). The *Goldberger* court emphasized that where the

lodestar is "used as a mere cross-check, the hours documented by counsel need not be

exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50.

### (i)    The Number of Hours Worked by Plaintiffs' Counsel In Connection With This Litigation Was Reasonable

The starting point for any lodestar analysis is the calculation of the lodestar – which is

"comprised of the amount of hours devoted by counsel multiplied by the normal, non-contingent

hourly billing rate of counsel." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410,

414 (S.D.N.Y. 1997). Here, despite the early stage of the litigation in which the Settlement was

achieved, Lead Counsel performed a substantial amount of work on behalf of the Class. *See*

MacFall Declaration ¶¶12-33. For instance, Lead Counsel reviewed and analyzed all of Telik's

publicly available filings and financial statements; researched the biotechnology field and Food

and  Drug Administration ("FDA") regulations governing the new drug approval process in

drafting a detailed amended complaint; worked with consultants concerning the FDA approval

process and in analyzing the Phase 3 test results announced by Telik at the end of the Class

18331v2                                    9

Period; worked with an expert with respect the loss of market value for Telik and the potential recoverable damages in the Action; participated in hard-fought settlement negotiations and in a mediation under the supervision of the Hon. Daniel Weinstein (Ret.); reviewed thousands of pages of documents, with the assistance of Plaintiffs' Counsel, produced by Telik to confirm the accuracy of certain factual representations that had been made throughout the settlement negotiations and mediation, as well as to confirm the adequacy of the proposed Settlement; conducted the depositions of Defendant and Telik CFO Cynthia Buttita, as well as Telik Chief Medical Officer Dr. Gail Brown; and prepared papers in support of the settlement. In light of the complexity of the claims and defenses asserted by the parties, the significant amount of time litigating the action on behalf of the Class, and the complex nature of the negotiations that produced the Settlement, Plaintiffs' Counsel respectfully submit the total number of hours billed in connection with this Action – 1,423.85 – is reasonable.

A number of relevant factors fully support this conclusion. Plaintiffs' Counsel have made every effort to be efficient in litigating this action. Furthermore, Plaintiffs' Counsel are highly experienced in prosecuting securities law claims and shareholder class actions. *See* firm resumes, which are part of the fee affidavits and declaration attached to the MacFall Decl. as Exhibits A, B, and H. Thus, Plaintiffs' Counsel were able to perform the various tasks necessary to advance Plaintiffs' and the Class's interests in a more efficient manner than would have counsel with a lesser degree of specialization in this highly complex field.[9]

---

[9] *See Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.,* No. 01 CV 11814 (MP), 2004 WL 1087261, at *6 (S.D.N.Y. May 14, 2004) (noting that the skill and prior experience of counsel in the specialized field of shareholder securities litigation is relevant in determining fair compensation).

(ii)    **The Rates Charged By Plaintiffs'**
       **Counsel Are Reasonable**

The second step in the lodestar cross-check analysis is to test the reasonableness of the

current billing rates charged by Plaintiffs' Counsel.[10]  In determining the propriety of the hourly

rates charged by plaintiffs' counsel in class actions, courts have continually held that the

standard is the rate charged in the community where the services were performed for the type of

service performed by counsel.[11]  Perhaps the best indicator of the "market rate" in the New York

area for plaintiffs' counsel in securities class actions is to examine the rates charged by New

York firms that *defend* class actions on a regular basis.  Viewed in light of that market

barometer, Plaintiffs' Counsel's rates are entirely reasonable.

For example, a *National Law Journal* summary of billing rates at various law firms

confirmed that New York firms that frequently represent defendants in securities class actions

billed at rates comparable to or higher than those currently charged by the principal counsel who

performed services for Plaintiffs in this action.  *See Firm-by-Firm Sampling of Billing Rates*

*Nationwide*, Nat'l L.J., Dec. 12, 2005, at S2.  Specifically, that article revealed that the

---

[10]  The use of current rates to calculate the lodestar figure has been repeatedly endorsed by courts as a means of accounting for the delay in payment inherent in class actions and for inflation. *See, e.g., Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) ("an appropriate adjustment for delay in payment" by applying "current" rate is appropriate), *aff'd sub nom. Jenkins v. Missouri*, 931 F.2d 1273 (8th Cir. Mo. 1991); *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (rates "should be 'current rather than historic'") (citation omitted); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) (current rates "should be applied in order to compensate for the delay in payment").

[11]  *See, e.g., Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115-16 (2d Cir. 1997) ("The 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'") (quoting *Blum*, 465 U.S. at 896 n.11); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (appropriate rate in performing lodestar analysis is "the rate 'normally charged for similar work by attorneys of like skill in the area,' taking into account factors such as the experience of the attorney performing the work and the type of work performed") (citation omitted)

Manhattan firms with substantial securities class action defense practices had the following

partnership level billing rates in 2005 – several years ago:  Kramer Levin Naftalis & Frankel

($530-$775); Orrick, Herrington & Suttcliffe ($355-$715); and White & Case ($560-$830).

The current hourly rates of the partners litigating the Action on behalf of the Class, who

performed the vast majority of the partner-level work on this matter range from $700 to $750.

*See* Exs. A, B, and H to MacFall Decl.  Those rates fall well within the norm of the rates charged

by those attorneys' common adversaries in the defense bar.  Likewise, associate rates for the

majority of work charged by Plaintiffs' Counsel range from a low of $300 per hour to a high of

$550 per hour.  *See id*. and Exs. A, B and H to MacFall Declaration. Again, those rates are

consistent with those charged by the defense bar for similar work.

Finally, courts in this District and around the country have repeatedly found rates charged

by plaintiffs' counsel in class actions that are comparable to those at issue here to be reasonable

given the nature of such work and the risks associated with financing class actions.[12]  Thus, a

market check and substantial precedent demonstrate that the rates utilized by Plaintiffs' Counsel

in calculating their lodestars are reasonable.

### (iii)        The Requested Multiplier Is Low

Courts have continually recognized that, in instances where a lodestar analysis is

employed to calculate attorneys' fees or used as a "cross check" for a percentage of recovery

analysis, counsel may be entitled to a "multiplier" of their lodestar rate to compensate them for

---

[12]  *See, e.g., In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 WL
22244676, at *9 (S.D.N.Y. Sept. 29, 2003) (rates five years ago of $650/hour for a partner, and
$300-$425/hour for associates, are "not extraordinary for a topflight New York City law firm");
*In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061, 1065 (E.D. Mo. 2002) ("Similarly,
while the hourly rates ranging up to $695 are high for the Eastern District of Missouri, they are
nonetheless within the range of reasonableness in the realm of nationwide securities class
actions.").

the risk assumed by them, the quality of their work and the result achieved for the class.[13]  Here,

utilizing the number of hours and hourly billing rates set forth in the firm affidavits attached to

the Macfall Declaration, Plaintiffs' Counsel's lodestar is $779,297.75.  *See* MacFall Decl. ¶61.

Thus, the fee requested is 1.6 times Plaintiffs' Counsel's lodestar.

As this Court is aware, in contingent litigation, lodestar multiples of over 4 are routinely

awarded by courts, including this Court.  *See, e.g., Maley*, 186 F. Supp. 2d at 369 (awarding fee

equal to 4.65 multiplier, which was "well within range awarded by courts in this Circuit and

courts throughout the country"); *EVCI*, 2007 WL 2230177, at *17 (2.48 multiplier "is within the

range found to be reasonable") (collecting cases and noting that "[l]odestar multipliers of nearly

5 have been deemed 'common' by courts in this District.").  Here, Lead Counsel seeks a 1.6

multiplier, well within that range.

### C.    The Requested Attorneys' Fees Are Reasonable Based On The Second Circuit Criteria

The *Goldberger* court held that the appropriate percentage fee in a class action is a matter

of judicial discretion that "should be assessed based on scrutiny of the unique circumstances of

each case . . ." *Goldberger*, 209 F.3d at 53.  The Second Circuit did, however, set forth the

factors that should be considered by district courts in arriving at a suitable percentage.

Specifically, the court held that:

---

[13] *See, e.g., In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at *16 (E.D. Pa. June 2, 2004) (multiplier used to "reflect the risks of nonpayment facing counsel, to serve as an incentive for counsel to undertake socially beneficial litigation, or as a reward to counsel for an extraordinary result"); *Goldberger*, 209 F.3d at 54 ("We have historically labeled the risk of success as 'perhaps the foremost' factor to be considered in determining whether to award an enhancement.") (citation omitted); *Prudential*, 985 F. Supp. at 414 ("Because counsel who rendered services were not being compensated for their work as it was being performed and because of the significant risk that they might never receive any compensation if the action was unsuccessful, courts have, when warranted, applied a multiplier to the lodestar to arrive at a fair contingent fee.").

18331v2                                          13

District courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."

*Id.* at 50 (quoting *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)).

### 1. The Significant Time And Labor Expended By Counsel To Produce A Settlement Supports The Fee Requested By Plaintiffs' Counsel

The first factor set forth in *Goldberger* for determining an appropriate attorneys' fee is the time and labor expended by counsel. *Goldberger*, 209 F.3d at 50. As is detailed in the Declaration, the Settlement was the result of the efforts of Plaintiffs' Counsel. *See* MacFall Decl. ¶¶1-11; 27-33. In total, Plaintiffs' Counsel have spent over 1,400 hours litigating this matter. *Id.* ¶61. Those efforts have included a great deal of sophisticated work related to Plaintiffs' claims for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder. *Id.* at ¶¶13, 18-26. Lead Counsel also conducted substantial factual research concerning Telik and its business activities, as well as the new drug approval process and the pertinent FDA regulations. As is described in detail in the MacFall Declaration, that investigation included the review of SEC filings, news reports, analyst reports, FDA regulations, review of oncological literature, review of clinical trial testing procedures, and discussions with consultants concerning the new drug approval process, specifically in connection with cancer-treatment new drug candidates.

In addition, Lead Counsel spent a considerable amount of time negotiating the terms of the Settlement, including the negotiation and drafting of the necessary settlement documents. Lead Counsel met and conferred with Defendants' Counsel prior to engaging in mediation. On November 27, 2007, both sides participated in a mediation under the supervision of the

Honorable Daniel Weinstein, retired Superior Court Judge of California, and his assistant, Jed Melnick, Esq., negotiating well into the night, but the parties were unable to reach any agreement. *See* MacFall Decl. ¶16. After six weeks of intense negotiating conducted through Judge Weinstein, a Memorandum of Understanding was signed on January 15, 2008. Thereafter, Plaintiffs' Counsel undertook the review of thousands of pages of documents to confirm the adequacy and fairness of the Settlement, as well as confirm various factual assertions that had been made during the parties' negotiations. MacFall Decl. ¶¶16-17. Lead Counsel also conducted the depositions of Telik's Chief Medical Officer, Dr. Gail Brown, and CFO, Defendant Cynthia Buttita, to confirm various facts concerning Plaintiffs' claims and the fairness of the Settlement. MacFall Declaration, ¶17. Finally numerous exchanges *via* e-mail and telephone calls followed so that the settling parties could reach an agreement on the necessary settlement documentation. Ultimately, the efforts of Lead Counsel and Defendants' Counsel resulted in the execution of the Stipulation and Agreement of Settlement dated April 16, 2008.

Thus, Plaintiffs' Counsel expended significant time and labor in prosecuting Plaintiffs' claims. Those concerted efforts were undertaken on a contingent fee basis despite the possibility that Plaintiffs and the Class would not prevail in this litigation, and that Lead Counsel could therefore receive nothing for their efforts. The "time and labor expended by counsel" in producing the proposed Settlement with Defendants, therefore, supports the $1.25 million fee requested by Plaintiffs' Counsel.[14]

---

[14] *See, e.g., Sumitomo*, 74 F. Supp. 2d at 399-400 (27.5% fee award, representing a multiplier of 2.5, was justified in action involving settlement in excess of $115 million because Plaintiffs' counsel "were required to expend substantial amounts of professional time and money away from other professional business in order to prosecute the action, with no certainty of recovery thereof from any source").

### 2.    The Magnitude And Complexity Of This Litigation Support The Award Of The Fee Requested By Plaintiffs' Counsel

The second factor to consider for determining the appropriate fee in class action settlements is the "magnitude and complexities of the litigation." The discussion of those issues in the MacFall Declaration and above in Section C.1. amply demonstrates that this case was complex. *See* MacFall Declaration, ¶¶18-26; 27-33. This factor also supports the reasonableness of the fee.

As an initial matter, there is no question that this litigation is complex and presented enormous challenges. The complex challenge of marshalling proof in connection with asserting Plaintiffs' claims must also be recognized. This case presented complex issues of law and fact that Plaintiffs' Counsel had to navigate from the commencement of the action. Further, as detailed in the MacFall Declaration, the stature of this case changed dramatically during settlement negotiations. *See id*. ¶27. Nonetheless, Lead Counsel aggressively pursued the remaining claims to achieve the instant $5 million Settlement.

Thus, Plaintiffs' Counsel has produced a positive settlement for the Class although this case presented profound difficulties from a factual standpoint. Accordingly, Plaintiffs' Counsel's ability to tackle a case of substantial magnitude and complexity, and produce a beneficial result for the Class, fully supports the requested fee.

### 3.    The Substantial Risks to Plaintiffs' Recovery Fully Support The Fee Requested By Lead Counsel

Courts have repeatedly recognized that "the risk of the litigation" is a pivotal factor in assessing the appropriate attorneys' fees to award to plaintiffs' counsel in class actions. *See, e.g.*, *Goldberger*, 209 F.3d at 50. Here, Plaintiffs' Counsel faced significant risks that they might be unsuccessful in obtaining any recovery for the Class and, therefore, that they would receive no payment for their efforts. *See* MacFall Decl. ¶63.

18331v2                                    16

As an additional matter, following Congress's adoption of the Private Securities Litigation Reform Act (the "PSLRA") in 1995, dismissals of securities class actions at the pleading stage have grown increasingly commonplace. Indeed, a University of Michigan study published in 2000 concluded that "60 percent of securities class actions were dismissed in 1996 and 1997, compared with 40 percent in 1991 and 1992."[15] Thus, Lead Counsel faced substantial risk that they might receive no payment for their efforts.

Plaintiffs' Counsel undertook their representation of Plaintiffs and the Class in this Action on a contingent-fee basis, investing a substantial amount of time and money to prosecute this Action in the expectation that if they were successful in obtaining a recovery for the Class they would receive a percentage of that recovery, but without a guarantee of compensation, or even the recovery of out-of-pocket expenses. Thus, counsel might have expended a substantial amount of attorney time in pursuing this Action, yet receive no compensation whatsoever if the Action proved ultimately unsuccessful. MacFall Decl. ¶63. Unlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Lead Counsel have not been compensated for any time or expenses in their prosecution of this Action and would have received no compensation or even reimbursement of expenses had this Action not been successful.[16]

---

[15] Michael R. Davisson, *D&O Liability Update: Trends for D&O Insurers,* 10 No. 32 Andrews Ins. Coverage Litig. Rep. 679 (Aug. 11, 2000).

[16] The risk of no recovery in complex cases of this type is real. There have been numerous class actions in which lead counsel expended thousands of hours and yet received no remuneration despite their diligence and expertise. *See, e.g., Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*, 148 Fed. Appx. 66, 99 (2d Cir. 2005) (affirming summary judgment and dismissal of all plaintiffs' claims, including 10(b) and 20(a) claims); *AUSA Life Ins. Co. v. Ernst & Young*, 39 Fed. Appx. 667, 669 (2d Cir. 2002) (affirming district court's dismissal after a full bench trial and earlier appeal and remand); *Robbins v. Koger Props.* Inc., 116 F.3d 1441, 1449 (11th Cir. 1997) (jury

The Second Circuit has explicitly recognized that the attorneys' "risk of litigation" is an important factor to be considered in making an appropriate fee award. Thus, in *Grinnell*, the Second Circuit explained:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

(citing *Cherner v. Transitron Elec. Corp.*, 221 F. Supp. 55, 61 (D. Mass. 1963)).

### (i)     Litigation Risks

Plaintiffs believe that the claims asserted in the Action have merit. However, as discussed above, Plaintiffs and their counsel recognize that there were serious risks in proceeding with this litigation. The fact record developed immediately prior to the Settlement demonstrated that the balance clearly tipped towards Defendants.

Defendants would have undoubtedly moved to dismiss the complaint, and the Court may have granted all or part of such a motion. If Plaintiffs survived that motion, in light of the facts revealed by the Telik Defendants during settlement negotiations, the Court could very easily have granted summary judgment. As detailed in the MacFall Declaration, even if Lead Plaintiff amended its Complaint to allege different claims, Plaintiffs would have faced substantial hurdles in establishing scienter and loss causation. *See* Settlement Memorandum at 13-14.

As discussed above, Plaintiffs' Counsel was also cognizant that the nature of the claims at issue presented a number of legal obstacles to establishing Defendants' liability. For instance, Lead Plaintiff had the burden of demonstrating that Defendants acted with scienter in order to

---

verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant).

establish a violation of Section 10(b) of the Exchange Act.  Proving a defendant's state of mind is notoriously difficult.  Here, as detailed in the Declaration, the remaining claims concerned the misleading nature of the Telik Defendants' statements concerning their "interim looks" at Phase 3 trial data.  Proving Defendants' intent to defraud was, thus, a significant hurdle.  Moreover, Defendants would have argued they had no motive to commit fraud, and that their conduct did not rise to the level of recklessness.  Defendants also would have argued that some analysts construed their statements concerning "interim looks" as relating only to data made available to the independent Data Monitoring Committees for each of the trials, which committees were precluded under their respective charters from disclosing such information to Defendants.  Finally, Plaintiffs anticipate that Defendants would have asserted that Plaintiffs could establish no causal link between the disclosure of the truth concerning the interim looks and the decline in the price of the stock, arguing that such market loss resulted only from the failure of the Company's primary new drug candidate in all three Phase 3 clinical trials.

As a result of the foregoing, it was readily apparent to Plaintiffs and their Counsel that there were substantial risks to achieving a recovery had Plaintiffs not agreed to settle at this point in the proceedings.  Although Plaintiffs believe they could prevail at trial, any of the above issues could be resolved against Plaintiffs, leaving the Class with no recovery at all.

### 4.    The Quality Of Plaintiffs' Counsel's Representation Of The Class Supports The Fee Requested

The fourth factor cited by the Second Circuit for determining the percentage fee to be awarded to class counsel is the "quality of representation" delivered in the litigation.  *See Goldberger*, 209 F.3d at 50.  Lead Counsel believes that they have provided excellent representation to the Class, given the serious challenges that arose during litigation of the Action.

As described more fully in the Declaration, the Settlement represents an excellent recovery for the Class in light of the significant risks. *See* MacFall Decl. ¶¶2, 11, 27-33. The quality of Lead Counsel's work is evidenced by the fact that they were able to obtain a favorable result for the Class in the face of such substantial risks.[17]

The overwhelmingly positive reaction of the Class to the Settlement further demonstrates that Plaintiffs' Counsel have generated an excellent result. Over 54,000 Notices have been mailed to the Class. *See* Keough Affidavit (Ex. D to MacFall Decl.) at ¶7. To date, only three Class Members have elected to opt out of the Settlement. *See* Keough Affidavit at ¶11; MacFall Decl. ¶7. Likewise, only one Class Member, Mr. May, has objected to the fee request. Mr. May, however, provides no particularized basis for that objection, stating only that the Court should not compensate counsel until counsel provides "relief" to shareholders. *See* Seidman Decl. Ex. H. His objection is based not on the fee requested, but on the underlying Settlement. However, Mr. May's objections to the reasons for the Settlement are groundless and his objection to the fee should, therefore, be given no weight. *See id.*

Plaintiffs' Counsel respectfully submit that the miniscule percentage (.004%) of exclusions and objections from the Class is strong support for approval of the fee request.

---

[17] Courts have continually recognized that the quality of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance. *See, e.g., Teachers' Ret. Sys.*, 2004 WL 1087261, at *7 ("The quality of opposing counsel is also relevant in evaluating the quality of services rendered by Plaintiffs' Counsel."); *Maley*, 186 F. Supp. 2d at 373 (noting that one factor supporting a 33-1/3% fee award was that defendants were represented by five law firms, including several "nationally prominent" firms); *NASDAQ Market-Makers*, 187 F.R.D. at 488 ("The quality of opposing counsel is also significant in considering the quality of services rendered by plaintiffs' counsel, as measured by the result achieved."); *In re Med. X-Ray Film Antitrust Litig.*, No. 93-5904, 1998 WL 661515, at *18 (E.D.N.Y. Aug. 7, 1998) (among factors supporting 33% award of attorneys' fees was that "plaintiffs' counsel confronted defense counsel from highly respected law firms that raised several challenges to the merits of this case").

### 5. The Fee Requested Is Fair In Relation To The Settlement Amount

The fifth factor cited by the Second Circuit for determining the appropriate percentage fee award in class actions is the "requested fee in relation to the settlement," *i.e.*, whether the fee represents a fair percentage of the settlement achieved. *Goldberger*, 209 F.3d at 50.

The 25% fee requested here is well below the range of fees awarded in this Circuit in similar circumstances. For instance, in *Maley* the Court awarded plaintiffs' counsel a fee equal to one-third of a $11.5 million settlement of an action. 186 F. Supp. 2d at 370. The court in *Maley* also cited three other examples of recent cases in which courts have awarded percentage fees of one-third.[18] It could well have cited many other cases in the Second Circuit involving similar results.[19]

Here, Plaintiffs' Counsel requests 25% of the Settlement. Given the significant risks at stake in succeeding on a motion to dismiss, a motion for summary judgment, or at trial, 25% of the Settlement is reasonable.

### 6. Public Policy Considerations Fully Support The Fee Requested

The sixth factor that should be considered in determining the fee awarded to plaintiffs' counsel in class actions is "public policy considerations." *Goldberger*, 209 F.3d at 50. "A

---

[18] *Maley*, 186 F. Supp. 2d at 368 (awarding fee of 33 1/3 % of a $21 million settlement reached prior to the commencement of depositions)); *Newman v. Caribiner Int'l, Inc.*, No. 99-2271, slip op. at 7 (S.D.N.Y. Oct. 22, 2001) (awarding a fee of 33 1/3% of a $15 million settlement reached prior to the commencement of depositions); *Safety Components*, 166 F. Supp. 2d 72 at 109 (fee award of 33 1/3% of the settlement fund).

[19] *See, e.g., In re Blech Sec. Litig.*, No. 94-7696, 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002) (awarding fee of 33 1/3% of a settlement in excess of $25,000,000); *Adair*, 1999 WL 1037878, at *1 (33% fee); *Klein*, 1999 WL 38179, at *1 (33% fee); *Med. X-Ray*, 1998 WL 661515, at *7 (33.33% fee); *Maywalt v. Parker & Parsley Petroleum Co.*, 963 F. Supp. 310, 313 (S.D.N.Y. 1997) (stating that award of 33.4% "falls within the normal range of fee awards in similar complex cases"), *aff'd sub nom. Olick v. Parker & Parsley Petroleum Co.,* 145 F.3d 513 (2d Cir. 1998).

strong public policy concern exists for rewarding firms for bringing successful securities litigation." *In re Ashanti Goldfields Sec. Litig.*, No. Civ. 00-717 (DGT), 2005 WL 3050284, at *5 (E.D.N.Y. Nov. 15, 2005); *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 236 (S.D.N.Y. 2005) ("public policy supports granting attorneys fees that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC").

Plaintiffs' counsel in complex securities class action litigation are invariably retained on a contingent basis, largely due to the scope of the commitment of time and expense required. Indeed, lawyers that pursue private suits such as this one on behalf of investors augment the overburdened SEC by "acting as 'private attorneys general.'" *Ressler v. Jacobson*, 149 F.R.D. 651, 657 (M.D. Fla. 1992) (citation omitted). In addition, the typical class representative is unlikely to be able to pursue long and protracted litigation at their own expense.

Thus, "public policy favors the granting of [attorneys'] fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions." *Id.*[20] Plaintiffs' Counsel pursued claims against Defendants in an attempt to redress the substantial losses they allege Defendants caused Class members as a result of challenged omissions and misstatements. *See* MacFall Decl. at ¶¶18-26; 33. As the federal courts have recognized time and again, private enforcement of the federal securities laws is a necessary adjunct to

---

[20] *See also Hicks*, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.") (citation omitted); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003)("There is . . . commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest") (citing *Goldberger*, 209 F.3d at 51.

government intervention.[21]  Moreover, the well-publicized corporate scandals that have

transpired in the past few years highlight the great importance of private enforcement of the

federal securities laws.[22]  Therefore, while many of Plaintiffs' allegations in the Complaint may

not have been borne out, public policy still favors compensating counsel for their commitment of

time and expenses in pursuing the Action.

### D.    Only One Class Member Has Objected to the Requested Fee

Over 54,000 copies of the Notice have been disseminated to potential members of the

Class.  The Notice informs the Class that Plaintiffs' Counsel intends to apply for an award of

attorneys' fees not to exceed thirty percent (30%) of the Gross Settlement Fund, and for

reimbursement of their expenses in the approximate amount of $125,000, plus interest on such

fees and expenses at the same rate as earned by the Settlement Fund.  Members of the Class,

which would include sophisticated institutional investors, were informed that they could object

to the amount of attorneys' fees or expenses requested.  The deadline for filing such objections

has passed, and only one Class Member has come forward to object to the fee request.  *See*

MacFall Decl. ¶62.  That only one objection to the fee request was received is powerful evidence

that the requested fee is fair and reasonable.  *See In re Prudential Sec. Inc. Ltd. P'ships Litig.*,

912 F. Supp. 97, 103 (S.D.N.Y. 1996) (court determined that an "isolated expression of opinion"

should be considered "in the context of thousands of class members who have not expressed

---

[21] *See, e.g., Maley*, 186 F. Supp. 2d at 374 ("Private attorneys should be encouraged to take the risks required to represent those who would not otherwise be protected from socially undesirable activities like securities fraud.").

[22] *See, e.g., Maley*, 186 F. Supp. 2d at 374 (it is "imperative that the filing of such contingent lawsuits not be chilled by the imposition of fee awards which fail to adequately compensate counsel"); *Maywalt*, 963 F. Supp. at 313 ("[P]ublic policy favors providing incentives for the prosecution of private securities litigation to enhance securities law enforcement and compliance.").

themselves similarly"); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 327 (E.D.N.Y. 1993)
(lack of objections to requested fee supported its reasonableness); *Ressler*, 149 F.R.D. at 656
(lack of objections is "strong evidence of the propriety and acceptability" of fee request).

Moreover, as noted above, the objection to the fee request is utterly groundless. One
objector, Andrew May, claims, without any rational grounds for his belief, that the settlement
does not warrant approval because, *inter alia*, it represents a tiny fraction of Telik's market loss.
But, as discussed at length in the Mac Fall Declaration, Lead Counsel's analysis shows that the
vast majority of Telik's collapse in market capitalization was *unrelated* to the allegations in this
case, but due to the failure of their leading new drug candidate.

## III.    THE REQUEST FOR REIMBURSEMENT OF EXPENSES IS REASONABLE

It is well established that counsel who create a common fund are entitled to the
reimbursement of expenses that they advanced to a class. *See, e.g., Teachers' Ret. Sys.*, 2004
WL 1087261, at *6; *Am. Bank Note*, 127 F. Supp. 2d at 430. Moreover, courts have awarded
such expenses so long as counsel's documentation of them is "adequate." *NASDAQ Market-
Makers*, 187 F.R.D. at 489.

In the MacFall Declaration and the accompanying exhibits, Plaintiffs' Counsel detail and
document the $100,118.19 in expenses reasonably incurred in connection with prosecution of the
Action. *See* MacFall Decl., Exs. A, B, and H. These expenses are of the type that law firms
typically bill to their clients and include such things as expenses for expert witness fees,
document review and management and depositions.[23]  Plaintiffs' Counsel expended $12,890.98
for their damage expert and incurred $$1,530.75 in costs for duplicating and imaging services.

---

[23] *See, e.g., LeBlanc-Sternberg*, 143 F.3d at 763; *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570
(7th Cir. 1992).

These costs were necessary to litigate this action and conduct the confirmatory depositions, which took place in California. Plaintiffs' Counsel also expended $44,167.44 in costs for electronic research, including Westlaw and Lexis.

Finally, as noted above, no objections have been submitted with respect to the expense amount stated in the Notice. Therefore, Plaintiffs' Counsel respectfully request reimbursement of expenses in the amount of $100,118.19, which is well under the $125,000 stated in the Notice.

## CONCLUSION

For all of the reasons set forth above, Plaintiffs' Counsel should be awarded attorneys' fees in the amount of 25% of the Gross Settlement Amount, and the reimbursement of expenses in the amount of $100,118.19, plus interest on such fees and expenses at the same rate as earned by the Settlement Fund.

Dated: New York, New York  
   August 29, 2008

Respectfully submitted,

**BERNSTEIN LIEBHARD & LIFSHITZ, LLP**

/s/

By: _____  
Stanley D. Bernstein (bernstein@bernlieb.com)  
Mel E. Lifshitz (lifshitz@bernlieb.com)  
Timothy J. MacFall (macfall@bernlieb.com)  
Joseph R. Seidman, Jr. (seidman@bernlieb.com)  
10 East 40th Street  
New York, New York 10016  
(212) 779-1414

(212) 779-3218 (fax)

*Attorneys for Lead Plaintiff and Proposed Settlement Class*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the attached was served upon the following counsel of record in the actions filed this Court, First Class Mail prepaid, this 29th day of August, 2008:

*Attorneys for Defendants:*

David W. Haller
Linda C. Goldstein
**Covington & Burling LLP**
620 Eighth Avenue
New York, NY  10018

Jamie Levitt
**Morrison & Foerster LLP**
755 Page Mill Road
Palo Alto, CA  94304

*Attorneys for Plaintiff Mehan Group:*

David A.P. Brower
**Brower Piven, P.C.**
488 Madison Avenue
Eighth Floor
New York, New York  10022

*Objectors* (by fedex):

Andrew May
10321 Beaumont St.
Fairfax, VA  22030

Lloyd Sampson
2849 27th St. S.
Fargo, ND  58103

/s/

_____
JOSEPH R. SEIDMAN, JR.