UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TELIK, INC.<br>SECURITIES LITIGATION | ) Civil Action No. 07-cv-04819 (CM)<br>)<br>)<br>)<br>)<br>)<br>) |

**DECLARATION OF JOSEPH R. SEIDMAN, JR.
IN SUPPORT OF FINAL APPROVAL OF PROPOSED
CLASS ACTION SETTLEMENT AND PETITION FOR AN
AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

JOSEPH R. SEIDMAN, JR. hereby declares as follows:

I.   **INTRODUCTION**

1.   I am a senior associate with the law firm of Bernstein Liebhard & Lifshitz, LLP ("Bernstein Liebhard"), court-appointed Lead Counsel ("Counsel") for Lead Plaintiff Policemen's Annuity and Benefit Fund for the City of Chicago ("Lead Plaintiff"), in the above-captioned consolidated securities class action (the "Action"). I submit this declaration in support of: (i) the proposed settlement (the "Settlement") of the Action pursuant to a Stipulation and Agreement of Settlement dated April 16, 2008 (the "Stipulation"), with Defendants Telik, Inc. ("Telik"), Michael M. Wick, Cynthia M. Butitta (the "Individual Defendants") (Telik and the Individual Defendants are referred to as the "Telik Defendants"), as well as UBS Securities LLC, Lehman Brothers Inc., and J.P. Morgan Securities Inc.; (ii) the plan of allocation of the proceeds of the Settlement (the "Plan of Allocation"); (iii) certification of the class for settlement purposes; and (iv)

the application of Plaintiffs' Counsel for an award of attorneys' fees and reimbursement of litigation expenses. I have actively participated in all aspects of the Action and I am familiar with the facts set out in this declaration.[1]

2. I first spoke to Andrew May on May 8, 2008, after his counsel, Marc Henzel, emailed me requesting that I do so. Ex. A. When I spoke to Mr. May, he told me he thought the settlement was a bad one and we discussed the reasons for the proposed settlement, including, chiefly, the fact that the evidence showed Telik Defendants were blinded to the underlying Phase 3 trial data during the pendency of the study.

3. At that time, I also directed Mr. May to Plaintiffs' Memorandum in Support of Preliminary Approval for a more detailed recitation of the reasons for the Settlement. Mr. May informed me that he thought the reasons I gave to him, as well as the reasons set forth in the preliminary approval papers, which he had apparently already read, were not good enough. Mr. May then asked me if he could see the documents provided by Telik as part of confirmatory discovery, as well as the confirmatory deposition testimony taken in connection with the settlement. I informed him that Plaintiffs could not disclose such materials because they had been produced to Plaintiffs on a confidential basis. I did, however, tell Mr. May that I would double-check with the partner on the case.

4. At the end of the conversation, Mr. May referred to flaws in patient population that he claimed affected the TELCYTA Phase 3 trials. One alleged flaw concerned the choice of Iressa as a control drug. Mr. May stated that the FDA had, at

---

[1] All defined terms contained in this declaration shall have the same meanings as set forth in the Stipulation.

18317v1                                2

one point, banned Iressa. However, Mr. May never expanded on his reasoning, ending the conversation at that point, claiming that I was not listening to him. That is simply not true. I repeatedly tried to answer all Mr. May's questions and understand the nature of his disappointment with the Settlement, but Mr. May ended the call.

5. On June 6, 2008, I received a letter from Mr. May. *See* Ex. B. In the letter, Mr. May again requested all the confirmatory discovery material, wrote that I did not contact his counsel, Marc Henzel, and asked how much cash on hand Telik had at the time the parties had agreed to the terms of the Settlement. *See id.* That same day, I wrote to Mr. Henzel, attaching Mr. May's letter to the email. *See* Ex. C. I informed Mr. Henzel that I did not – and still do not – recall telling Mr. May that I would call him. I further apprised Mr. Henzel that Plaintiffs could not honor his request for the confirmatory discovery materials because of a confidentiality agreement with Defendants. *See id.* Finally, I informed Mr. Henzel that Mr. May had also requested information concerning Telik's cash position at time the parties had agreed to the terms of the Settlement. I wrote that this was public information readily available from the Company's Securities and Exchange Commission ("SEC") filings. *Id.*

6. On June 19, 2008, I received Mr. May's formal objection in the mail. *See* Ex. D. In Mr. May's objection, he erroneously indicated that he was not provided with any information that supported the Settlement, even though he and I discussed those reasons at length on the telephone on May 8, 2008, and I had informed him that additional information was available in the papers submitted in support of Plaintiffs' Motion for Preliminary Approval of the Settlement. I also wrote Mr. Henzel on June 19, 2008 informing him that I had received Mr. May's objection. *See* Ex. E. Mr. Henzel

wrote back and informed me that Mr. May "did not like [my] reasons for the settlement." *See* Ex. F.

7. Mr. Henzel emailed me later that day (June 19th) saying he had forwarded my June 6, 2008 email to Mr. May, which reiterated that the materials and testimony provided by Defendants in connection with the proposed Settlement were confidential, and directed Mr. May to Telik's SEC filings to ascertain the Company's cash position at time the parties had agreed to the terms of the proposed settlement. *See id.*

8. Mr. May wrote again on July 27, 2008 (*see* Ex. G), claiming that he was misled about the number of depositions taken by Plaintiffs. This, too, is not true. I believe I informed Mr. May that two depositions were taken – Gail Brown and Defendant Buttita. In any event, I never informed him that "only one" deposition was taken, as Mr. May claims.

9. On August 13, 2008, Mr. May again wrote, claiming, *inter alia*, that he was entitled to see the documents produced by Defendants as part of confirmatory discovery. Mr. May also requested that Plaintiffs provide him with copies of Telik's insurance policies, although he had been repeatedly told Defendants had never provided us with copies of the insurance policies. Mr. May also asked in this letter that the Court "hold all compensation until Lead Counsel can bring relief to the shareholders." *See* Ex. H.

Dated: August 29, 2008

/s/

_____
JOSEPH R. SEIDMAN, JR.

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the attached was served upon the following counsel of record in the actions filed this Court, First Class Mail prepaid, this 29th day of August, 2008:

*Attorneys for Defendants:*

David W. Haller
Linda C. Goldstein
**Covington & Burling LLP**
620 Eighth Avenue
New York, NY 10018

Jamie Levitt
**Morrison & Foerster LLP**
755 Page Mill Road
Palo Alto, CA 94304

*Attorneys for Plaintiff Mehan Group:*

David A.P. Brower
**Brower Piven, P.C.**
488 Madison Avenue
Eighth Floor
New York, New York 10022

*Objectors* (by fedex):

Andrew May
10321 Beaumont St.
Fairfax, VA 22030

Lloyd Sampson
2849 27th St. S.
Fargo, ND 58103

/s/

_____
JOSEPH R. SEIDMAN, JR.

18317v1                                5